THE COUNTY OF UNION, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF, v. THE STATE OF NEW JERSEY, WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND JOANNE E. FINLEY, M.D., COMMISSIONER OF HEALTH OF THE STATE OF NEW JERSEY, DEFENDANTS, v. THE COUNTY OF HUDSON, A BODY POLITIC OF THE STATE OF NEW JERSEY, *AMICUS CURIAE*.

Superior Court of New Jersey
Law Division

Decided March 29, 1977.

Mr. William J. McCloud (Union County Counsel) for plaintiff.

Mr. Michael S. Bokar (Deputy Attorney General), for defendant (Mr. William F. Hyland, Attorney General, attorney; Mr. Bokar on the brief).

Mr. Walter J. Greenhalgh, Hudson County Assistant County Counsel, for Amicus Curiae (Mr. Harold J. Ruvoldt, Jr., County Counsel, attorney; Mr. Greenhalgh on the brief).

FELLER, J. S. C., retired, temporarily assigned on recall. This matter was heard on the adjourned return day of an order to show cause.

This action has been brought by the County of Union pursuant to the Declaratory Judgments Act (*N. J. S. A.* 2A:16–53) for the purpose of obtaining a determination with respect to the present status of the Division of Mosquito Control and Extermination, as well as the Mosquito Control Advisory Board, both of which were created as a part of the county's administrative code which became effective May 1, 1976.

Leave was granted Walter J. Greenhalgh, Assistant County Counsel of Hudson County, to file a brief and argue before this court as *amicus curiae*. He argued in favor of the contentions of plaintiff, and he further contends that even prior to the adoption of the Optional County Charter Law, the county had the power to abolish the county's Mosquito Extermination Commission pursuant to *N. J. S. A.* 26:9–27 *et seq.*

The complaint for declaratory judgment filed in behalf of plaintiff alleges that it seeks a determination of the rights, status and legal relations between the County of Union and

the State of New Jersey relative to the present status of the administrative code of the county.

*N. J. S. A.* 26:9–13 provides as follows:

The board of chosen freeholders of each county shall appoint a board of commissioners to be known as "the ————(there insert name of county) county mosquito extermination commission for the county."

*N. J. S. A.* 26:9–14 provides as follows:

Each county mosquito extermination commission shall be composed of six members in addition to the Director of the State Experiment Station and the Commissioner of Health, who shall be ex-officio members and who shall cooperate with them for the effective carrying out of their plans and work. At least three of the appointive members shall be persons who are or have been members or employees of boards of health and one appointed member of the board of chosen freeholders of the county.

It is further alleged in the complaint that the county, pursuant to *N. J. S. A.* 40:41A–1 *et seq.,* also known as the optional county manager form of government as set forth in *N. J. S. A.* 40:41A through 40:41A–58 presently conducts its affairs through the administrative code of the county adopted under the terms of *N. J. S. A.* 40:41A–125.

Plaintiff, acting pursuant to the Optional County Charter Law (*N. J. S. A.* 40:41A–1 *et seq.*) and its administrative code, abolished the existence of the former Union County Mosquito Extermination Commission, relying specifically upon the legislative authority found in *N. J. S. A.* 40:41A–26 (general law); *N. J. S. A.* 40:41A–27 (county powers generally), and *N. J. S. A.* 40:41A–30 (general powers). The duties and functions of that Commission were recreated in the Division of Mosquito Control and Extermination in Article 22, § C of the county's administrative code.

Plaintiff further alleges that the board of chosen freeholders of the County of Union, by Resolution 523 dated August 26, 1976, created the Mosquito Control Advisory Board and set forth therein the functions and duties of said

board, and by Resolution 524 dated August 26, 1976 appointed the members of that board.

Defendant William F. Hyland, Attorney General of New Jersey, acting in response to an inquiry from defendant Joanne E. Finley, Commissioner of Health of New Jersey, promulgated Formal Opinion 22–1976, dated September 1, 1976, in which the allegations in the complaint set out above were determined to be inconsistent with both the Optional County Charter Law (*N. J. S. A.* 40:41A–1 *et seq.*) and with *N. J. S. A.* 26:9–13 *et seq.*, and therefore invalid.

The complaint states that as a result of the findings, as contained in Formal Opinion 22–1976 promulgated by the Attorney General, the formerly existing Union County Mosquito Extermination Commission directed a letter to George J. Albanese, County Manager of the County of Union, requesting a clarification of whether the former commissioners or those appointed by Resolution 524 are legally constituted members of the board.

The Attorney General in the opinion submitted states that a county mosquito extermination commission is not a county agency but a state agency, and thus is not subject to the provisions of *N. J. S. A.* 40:41A–26 which permits counties that have adopted the Optional County Charter Law to abolish or consolidate agencies the existence of which has heretofore been mandated by state statute, providing that such abolition or consolidation shall not alter the obligation of the county to continue providing the service previously provided by such abolished or consolidated agency.

After citing *N. J. S. A.* 26:9–13, 26:9–14, 26:9–14.1; 26:9–22, 26:9–23, 26:9–25, 26:9–12.3, 26:9–12.6 and 26:9–12.8, the opinion concludes that from the foregoing statutory provisions it is clear that county mosquito extermination commissions are an integral part of a state-county cooperative effort designed to control the mosquito population throughout the State. The Commissioner of Health and the Director of the State Agricultural Experimental Station, in addition to the substantial mosquito extermination powers

vested in them by the applicable laws, are designated as ex-officio members of every county mosquito commission and ex-officio members of state or local agencies, and may participate and vote on an equal basis with appointed members. The designation of the Commissioner and Director as ex-officio members of county mosquito commissions is plainly intended to implement the reciprocal duty of cooperation between the state and county mosquito control commissions imposed by *N. J. S. A.* 26:9–12.8 and 26:9–14.

## I

Defendants state in effect that the Optional County Charter Law does not have any effect on the status of the former Union County Mosquito Commission since it was a state agency.

Counties are creatures of the State and are subdivisions thereof. However, they are entities unto themselves, but subject to the will and wisdom of the Legislature. The Legislature possesses authority to alter, expand or even abolish all or part of the Mosquito Extermination Act and State Mosquito Control Commission. That is precisely what occurred with the adoption of the Optional County Charter Law (*N. J. S. A.* 40:41A–1 *et seq.*).

After the first hearing this court propounded a number of questions concerning the status of mosquito extermination commissions, and a second hearing was scheduled so that the same could be answered. As a result the following information was obtained. Appropriations made under the statute from the State Mosquito Control Commission for state aid for mosquito control purposes in the various counties are not mandatory. The Director of the State Agricultural Experiment Station must approve a detailed estimate of funds required each year for the mosquito commission in each County and such amount must be appropriated. (*N. J. S. A.* 26:9–2 and *N. J. S. A.* 26:9–3). Such funds for mosquito control purposes are appropriated by the board of freeholders

in each County (*N. J. S. A.* 26:9–23) and the freeholders shall provide the commissions with a suitable office where the maps, plans, documents, records and accounts shall be kept, subject to public inspection at such time and under such reasonable regulations as the commission may determine (*N. J. S. A.* 26:9–20).

Further, it was conceded that in the event that the Commissioner of Health or the Director of the State Agricultural Experiment Station, or both, should be absent from a meeting of a county mosquito commission, this did not affect the validity of any action taken by the commission. Also, the State Mosquito Control Commission does not have any direct control or veto power over any action taken by the county mosquito commission, and the former county mosquito extermination commission had complete control over expenditures and programs. This control was not shared jointly with the State Mosquito Control Commission.

It was also evident that the State Mosquito Control Commission is to act in an advisory capacity only in all matters pertaining to mosquito extermination and control in the counties.

On Election Day of 1974 the voters of the Counties of Hudson, Mercer, Atlantic and Union adopted the Optional County Charter Law. These were the only counties to vote for the change. As a result each one of these counties have abolished their county mosquito extermination commissions as autonomous agencies and placed them under the direct control of the board of freeholders. In Union County the duties were taken over by the Department of Public Works.

Furthermore, in 1971, under the provisions of the old law — before the voters of Hudson County adopted the Optional County Charter Law in 1974 — the Hudson County Board of Freeholders abolished the Hudson County Mosquito Extermination Commission. The commission then sued the board (Docket L–24442–70 P. W.) in the Superior Court of Hudson County.

Hudson County Assignment Judge Larner delivered an opinion in which he ruled in favor of the Hudson County Board of Freeholders and against the mosquito commission. He stated that the provisions of *N. J. S. A.* 26: 9–13 were not mandatory and that the freeholders could undertake mosquito extermination duties pursuant to the provisions of *N. J. S. A.* 26:9–27, since Article 2 of the statute provides for (A) "Extermination by special commission" (*N. J. S. A.* 26:9–13 *et seq.*) or (B) "Extermination by Board of Freeholders" (*N. J. S. A.* 26:9–27 *et seq.*). As a result of this decision the Hudson County Counsel (*amicus curiae*) takes the position that even prior to the Optional County Charter Law the counties had the power to abolish county mosquito extermination commissions pursuant to *N. J. S. A.* 26:9–27 *et seq.*

Defendant further pointed out that in December 1973 the Legislature adopted an amendment to the law creating county mosquito commissions which states that "notwithstanding the provisions of any other law," such commissions "shall be composed" of the members appointed pursuant to *N. J. S. A.* 26:9–14 plus an additional member appointed for a three-year term (*L.* 1973, *c.* 295; *N. J. S. A.* 26:9–14.1).

Defendant states that "despite the provisions of any other law" must be read to include the Optional County Charter Law and in particular those provisions generally authorizing the reorganization of county agencies following adoption of a new charter. Defendant contends that the latter act expressly states in effect that a county freeholder board may not exercise its authority to abolish even an existing county agency where there exists "a clear legislative declaration to the contrary;" *N. J. S. A.* 26:9–14.1, which states that county mosquito extermination commissions "shall be composed" of the specific regular and ex-officio members "notwithstanding the provisions of any other law." This plainly constitutes such a declaration, and defendant states that this exempts county mosquito commissions from the pro-

visions of the Optional County Charter Law respecting reorganization of county agencies.

It is the opinion of this court that the above statutes, *N. J. S. A.* 26:9–14 and *N. J. S. A.* 26:9–14.1, apply only to those counties that have retained their mosquito extermination commissions. The amendment was adopted in December 1973, and amended the county mosquito extermination statute. It was not an amendment to the Optional County Charter Law. However, the voters of Atlantic, Hudson, Mercer and Union Counties adopted the Optional County Charter Law in November 1974 almost one year later. It was the votes of the electorate of these four counties that put into effect the Charter Law. The legislation *N. J. S. A.* 40:41A–1 *et seq.*, set up the procedures for this referendum.

Furthermore, the amendment of *N. J. S. A.* 26:9–14.1 was not a "clear" legislative declaration to the contrary. *N. J. S. A.* 40:41A–26 provides in part as follows:

The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient and expeditious manner and *absent a clear legislative declaration to the contrary* without regard to organizational, structural or personnel provisions contained in the legislation mandating such duty. [Emphasis supplied]

The expression, "absent a clear legislative declaration to the contrary," has been clarified by the County and Municipal Government Study Commission which published and distributed a commentary on the Optional County Charter Law. It states "except that the Legislature can specifically forbid the county from consolidating or abolishing any particular unit heretofore existing or it may in legislation passed hereafter specify that the county shall perform a task through a particular agency."

In *Trenton Parking Auth. v. Trenton*, 40 *N. J.* 251 (1963), the court held that if the Legislature had intended to exempt a parking authority from the city's building

code requiring the payment of a fee for a building permit, a provision to that effect could readily have been included in the law. The absence of such a provision leads to the conclusion that the Legislature intended no such exemption to exist. The same view is expressed in *Wall v. Hudson Cty. Park Comm'n*, 80 *N. J. Super.* 372 (App. Div. 1963), where the question arose as to whether a county park commission was exempt from liability for personal injuries resulting from the use of public grounds for the reasons that it was an agency of the county which was exempt. The court held that the exemption afforded by the statute did not extend to the activities of the county park commission. Had the Legislature intended such an exemption it would have clearly so stated. In *State v. Community Distributors*, 123 *N. J. Super.* 589 (Cty. Ct. 1973), the court held that failure to exempt from the purview of a statute manifests the legislative intent not to exempt, and where the Legislature has not granted an exception to the scope of the statute the judiciary cannot supply one.

Thus it is evident that a "clear legislative declaration to the contrary" means that such declaration should have been specifically spelled out in the law.

■ Therefore for the above reasons it is clear that the former Union County Mosquito Extermination Commission was not a state agency but a county agency and was not subject to supervision or control by the State.

## II

■ The statutory plan sets out in detail the system of county control and supervision.

*Chapter* 9 of *Title* 26 is set forth in three different and separate articles. Article 1 is entitled "State Extermination" and Article 2 is entitled "County Extermination." Article 2 is further divided by section A, entitled "Extermination by Special Commission," and Section B entitled, "Extermination by Board of Freeholders." Article 1 (state ex-

termination) sets forth the various duties imposed strictly upon the State of New Jersey (*N. J. S. A.* 26:9–1 through 12.9). In several of its sections a clear delineation is made between state functions and county functions. For example, *N. J. S. A.* 26:9–3 (survey by request) provides as follows:

* * * The Director or his executive officer shall survey at the request of the local board of health, or the county mosquito commission, any territory suspected of breeding mosquitoes, *within the jurisdiction of such board or commission.* [Emphasis supplied]

Furthermore *N. J. S. A.* 26:9–4, 26:9–5 and 26:9–6 all make reference to the local or county jurisdiction, thus indicating an intention by the Legislature to recognize such distinction.

*N. J. S. A.* 26:9–9 (abatement by local authorities) reads as follows:

* * * In case the landowner fails to comply with such order, the local board or *county commission* shall abate such nuisance in the manner provided in Article 3 of Chapter 3 of this title. [Emphasis supplied]

Such a Legislative direction would have been unnecessary if indeed the county commission were a state agency. It would not have been necessary to grant specific authority to county commissions if they were controlled by the State. *N. J. S. A.* 26:9–10 further emphasizes this distinction in the following manner:

* * * The commission shall have all the power of a local board insofar as the same pertains to a mosquito breeding nuisance artificially created and water in which mosquito larvae breed, but such power shall not extend over any lands owned by a municipality, county or state. *The powers granted in this article shall not be construed as to limit the powers conferred on county mosquito extermination commission by sections N. J. S. A.* 26:9–13 to 26:9–26. [Emphasis supplied]

Thus, the Legislature went to specific lengths to make absolutely certain that a separation of powers existed between

state and county extermination efforts, indicating that the intention was to differentiate between the jurisdiction of the State and the separate powers conferred upon county agencies.

Article 1 (state extermination) proceeds to create a State Mosquito Control Commission (*N. J. S. A.* 26:9–12.3) and sets forth its duties and responsibilities, including membership. If the Legislature intended state control only, and a state agency, it would not have been necessary to create a county extermination commission. Article 2 (county extermination), in addition to state extermination, indicates that it was the legislative intent to have the State as an overseer and the county agencies empowered in Article 2 to operate the day-by-day necessities. Section A of Article 2 (extermination by special commission) clearly sets forth the creation of separate county agencies and mandates their existence under *N. J. S. A.* 26:9–13. In providing for a county extermination commission as opposed to a state mosquito control commission the Legislature made certain that each county would have its own separate body to accomplish the legislative intent.

The oath of members of county extermination commission is not taken before a State official such as the Commissioner of Health or Director of the State Agricultural Experiment Station, but rather, like many other county officials and board members the oath is taken before the county clerk. *N. J. S. A.* 26:9–17.

Furthermore, the county commission is given authority under *N. J. S. A.* 26:9–19 to adopt its own rules and regulations, which appears to be another clear indication that it is a county agency, for if it were a state agency, all rules and regulations would be within the State's purview or at least subject to the approval of the State. In *N. J. S. A.* 26:9–21 (powers of commissions), under paragraph (d), the county commission has authority to perform all acts which *in its opinion* may be necessary for the elimination of mosquito-breeding areas or which shall tend to

exterminate mosquitoes *within the county.* None of this is subject to state approval, nor is any authority given a county commission to act outside the boundaries of its own county.

If county extermination commissions were state agencies, then their activities would not be limited to county boundaries and they could not act based solely on their own opinions and findings without state approval. Even the annual report (*N. J. S. A.* 26:9–25) is submitted, not to the State, but to the county board of freeholders. The above functions and duties are inconsistent with the concept of a state agency.

Turning to membership, it is interesting to note that members of the State Mosquito Control Commission are appointed by the Governor with the advice and consent of the Senate (*N. J. S. A.* 26:9–12.3), while members of county mosquito extermination commissions are appointed by the board of chosen freeholders in each County. If the county mosquito extermination commissions were state agencies, then why the statutory distinction on appointments to such commissions? The statutory provisions set out above lend strong support for the proposition that the legislative intent was to have residents of the particular County appointed as members of a county mosquito extermination commission. The entire purpose of setting up these commissions on a county-by-county level would be defeated if nonresidents were permitted to become members of a county commission.

The Legislature went to great lengths to be sure that county boards of elections and county boards of taxation were state agencies by providing that the members thereof be appointed by the Governor with the advice and consent of the Senate. The power of appointment given to boards of freeholders, and the activity delegated to them, leads to the inevitable conclusion that the Legislature intended that a county mosquito extermination control commission be a county agency.

Article 2, section B, entitled "Extermination by Board of Freeholders" (*N. J. S. A.* 26:9–27 *et seq.*), when considered *in pari materia* with Article 2, section A *supra* (extermination by special commission) (*N. J. S. A.* 26: 9–13.1 *et seq.*) clearly indicates the statutory intention to delegate to counties the task of exterminating mosquitoes.

Plaintiff contends that it has the authority to abolish the former county mosquito extermination commission because of the authority given to it by the adoption of the Optional County Charter Law by the voters of Union County in November 1974.

After reviewing the facts brought out at the hearing and the statutory grant to counties concurrently under consideration herein (*N. J. S. A.* 26:9–3 through 29:9–26), it is evident that a county mosquito extermination commission, such as formerly existed in Union County, was indeed a county agency and not a state agency and could be abolished under *N. J. S. A.* 40:41A–1 *et seq.*, the Optional County Charter Law.

That law was enacted after an investigation and a report submitted by a legislative commission organized to study county government. This commission, known as the Musto Commission (named after its chairman), developed the blueprint from which the Legislature formulated and adopted the Optional County Charter Law, *N. J. S. A.* 40:40A–1 *et seq.* This report was entitled "County Government Challenge and Change."

Apparently the Musto Commission recognized the county mosquito extermination commissions as county agencies. Specifically discussing an agency such as the mosquito commission, the Musto Report vividly describes by way of an example the very reason for its absorption by the administrative code of the county. The report stated, at 43:

* * * Even the most intelligent citizen seeking county services would have a problem obtaining satisfaction. If, for instance, behind his house, in a publicly-owned wooded area, there is a brackish creek which is a breeding ground for mosquitoes, whom does he call? In

all probability he would call his mayor, who would refer him to the municipal engineer or health officer, who would in turn give him a choice of agencies to call. He might try his Freeholder, the County Public Works Department, the County Engineer, the Park Commission, or even the County Agent and the Soil Conservation Board, or the Shade Tree Commission, the County Health Officer, *or the Mosquito Commission.* While the latter might be the most logical choice, it would not necessarily be the right one. [Emphasis supplied]

### III

Although defendants do not take issue with the contention that plaintiffs have authority to abolish a county agency under the terms of the Optional County Charter Law, plaintiffs contend that the former Union County Mosquito Extermination Commission was a county agency and not a state agency, and that it was the intention of the Legislature that the former extermination commission operate as a County agency empowered to operate day-by-day necessities, with the State as an overseer with no supervision or control over the county agency. Furthermore, the intent of the Legislature to grant counties broad powers to reorganize its government is expressed in *N. J. S. A.* 40:41A–26, which reads in part:

Nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute, providing that *such abolition or consolidation shall not alter the obligation of the County to continue providing the services previously provided by such abolished or consolidated agency.* [Emphasis supplied]

 It is the clear expressed intent of the Legislature to give a new county government created under the Optional County Charter Law power to restructure its form of government as it sees fit, consistent with the Constitution of New Jersey and general law. However, the obligations of the county to provide mandated services consistent with the general law of the State is not altered in any way. *American Fed'n of State, etc., Employees v. Hudson Cty. Welfare Bd.,* 141 *N. J. Super.* 25 (Ch. Div. 1976). Judge Kentz there held:

* * * It appears to me that the clear expressed intent of the Legislature and the meaning of the Law is to give the new county governments created under the law the sweeping power to restructure their form as they see fit, consistent with the Constitution and general law. The Legislature has gone to great lengths to manifest this intent. See *Sutherland, supra* § 56.02. The obligations of the counties as directed by state statutes are not altered in any way. Mandated services must continue. How they are to be administered is to be a decision of the elected county officials. * * * [at 32–33]

█ While a county may, under the Optional County Charter Law, disestablish or restructure a county mosquito extermination control commission, that power does not affect the provisions of *Title* 26, c.q., art. 1, entitled "State Extermination," as stated *supra*. The State under the above statutes continues as the overseer and the county agencies continue to operate the day-by-day necessities. This power vested in the State is a general law not inconsistent with the provisions of the Charter Law.

*N. J. S. A.* 40:41A–30 outlines the general powers granted to new forms of county government under the law. It provides as follows:

The grant of powers under this act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and *to alter or abolish its agencies* subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government. [Emphasis supplied]

This section sets out a sweeping legislative purpose to put into effect the desired reforms in county government. The same Legislature that created the mosquito commissions has from time to time altered or expanded their activities, powers and functions. It necessarily follows that the Legislature did by enactment of *N. J. S. A.* 40:41A–1 *et seq.*, authorize a change in the nature and existence of the mosquito commission. Thus, the success of a "charter change county" was the

grant by the Legislature of the power (if the county chose to exercise the same) to totally centralize all phases of county governmental activities.

The Legislature is presumed to know its former actions when adopting new enactments. *Wall v. Hudson Cty. Park Comm'n*, 80 *N. J. Super.* 372 (App. Div. 1963). Further, the Legislature has conducted a lengthy study of the problems facing county government, resulting in the Musto Report from which it proceeded to enact the Optional County Charter Law. In order to harmoniously construe both that act and the Mosquito Extermination Act, a provision was made in the former (*N. J. S. A.* 40:41A–26 and 40:41A–30) to continue the activities of the latter. There is no end to the activities, no cessation of the existence of mosquito control efforts, no dismissal or replacement of present employees and discontinuance of the programs of the commission. The only difference that will result is that the board of freeholders rather than the commissioners will be the final judges.

If, as planned, the commission is made an advisory board rather than an autonomous board, its activities will be subject to review and policy decisions will be made by the board of freeholders, the *elected* representatives of the people of Union County.

Under such a system, if the electorate is pleased or displeased by that policy, it can express itself at the polls. Under the former mosquito control commission, no such right existed, no such voice existed and no such public control existed.

The Optional County Charter Law gave to the people the right to choose whether they desired an autonomous or non-autonomous administration of their agencies. That law is merely the vehicle which permits county residents to choose to have a direct voice in the expenditure of funds and the making of policies by bringing that agency under the direct control of county government and expressing their desires at the polls.

Therefore, it is the opinion of this court that judgment shall be entered declaring that

(1) The provisions of the administrative code of the County of Union with respect to the former Union County Mosquito Extermination Commission was valid pursuant to the Optional County Charter Law (*N. J. S. A.* 40:40A-1 *et seq.*).
(2) Resolutions 523 and 524, dated August 26, 1976, adopted by the board of chosen freeholders, were valid and in conformity with *N. J. S. A.* 40:41A-26, 40:41A-27 and 40:41A-30.
(3) Formal Opinion 22-1976 promulgated by defendant Attorney General as a result of a request by defendant Commissioner of Health is incorrect, invalid and not binding upon the County or Union.
(4) The Division of Mosquito Control and Extermination of the Department of Public Works is a validly existing part of the government of the County of Union, and further, the Commissioners appointed by the board of chosen freeholders of the county by Resolution 524, dated August 26, 1976, are the lawful and valid members of said board to the exclusion of the former members of the Union County Mosquito Extermination Commission.