262 N.J. Super. 270 (1992)
620 A.2d 1071
DAVID H. WEINER AND LOUIS DEBELLO, AS CLASS REPRESENTATIVES OF THE EMPLOYEES OF THE FORMER ESSEX COUNTY WELFARE BOARD, PLAINTIFFS,
v.
COUNTY OF ESSEX, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided July 10, 1992.
*275 Ronald Reichstein for plaintiffs.
Norman Schulaner, Assistant County Counsel, for defendant (Stephen J. Edelstein, Essex County Counsel, attorney).
VILLANUEVA, J.S.C.
Plaintiffs, one retired and one present employee of the County of Essex and both former employees of the now-defunct Essex County Welfare Board, seek a declaratory judgment that Essex County is required to pay them post-retirement medical benefits.
The issue is whether Essex County, as successor to the former Essex County Welfare Board, is obligated to continue payments for health benefits coverage of those retirees of the county welfare agency who were covered by a 1974 resolution of the Essex County Welfare Board affording benefits to employees who retire with twenty-five or more years of service.
The court holds that the post-retirement medical benefits conferred by the 1974 Welfare Board resolution are property rights of employees employed at that time, which the County cannot unilaterally terminate. In addition, since the County failed to raise the issues belatedly asserted herein in a prior proceeding involving the subject resolution and in a prior appeal in this case, it is collaterally estopped from raising them now.

I.
Since 1972 the State has paid the cost of health insurance for eligible state employees who retire from service, or were retired from state service as of July 1, 1964, on a pension after twenty-five years of service or disability. L. 1972, c. 75, § 7 and by L. 1977, c. 136, § 1. N.J.S.A. 52:14-17.32. The option of *276 providing similar benefits to their retirees was extended to local employers participating in the State Health Benefits Program by virtue of L. 1974, c. 88, § 1. N.J.S.A. 52:14-17.38. Although payment of the health benefits premiums by local employers for their retirees was not mandatory, participation in any program under the State Health Benefits Plan must be "subject to and in accordance with the rules and regulations of the Commission relating thereto." N.J.S.A. 52:14-17.37. Regulations promulgated by the State Health Benefits Commission prescribed that any local employer who elected the option for free health benefits for eligible pensioners must do so by adopting a resolution providing that payment will:
1. Apply to all eligible present and future pensioners of the employer and their dependents;
2. Continue as long as the State is paying the cost of its eligible pensioners and their dependents in accordance with the provisions of Chapter 75, P.L. 1972.
3. Provide for local employer reimbursement of Federal Medicare premiums for eligible pensioners and/or their spouses, as well as the payment of health insurance premiums required by the program, on a basis comparable to the reimbursement made by the State to its eligible pensioners and their spouses in accordance with the provisions of Chapter 75, P.L. 1972 (see N.J.A.C. 17:9-5.8);
4. Require the local employer to pay the full cost of such premiums and Medicare charges;
5. Provide for an effective date not earlier than the first day of the month at least 90 days following the receipt of the local employer's resolution on forms approved by the division. N.J.A.C. 17:9-5.5(a).
On December 23, 1974, the Essex County Welfare Board, then an autonomous agency, passed Resolution No. 74-12-3[1], *277 containing the terms prescribed by State regulations promulgated by the State Health Benefits Commission under N.J.S.A. 52:14-17.38, which provided for payment of health insurance premiums and charges under Part B of the Medicare Program for "all eligible present and future pensioners of the employer" who retire after 25 years of credited service or upon a disability pension. This resolution, forwarded to the State Health Benefits Commission on January 13, 1975, became effective May 1, 1975. Eligible retirees of the Welfare Board thereafter began and continued to receive free health benefits coverage during its existence.
On May 1, 1979, Essex County reorganized its form of government pursuant to the Optional County Charter Law, N.J.S.A. 40:41A-1, et seq. The Welfare Board was abolished, restructured and its functions were assumed by the Essex County Department of Citizen Services, Division of Welfare. The Essex County Administrative Code provided that "[p]ension fund membership and rights of any officer or employee shall not ... be adversely affected by any transfer pursuant to the Code."
Plaintiffs DeBello and Weiner then became employees of the County of Essex pursuant to Section 14.3 of the Code which provided inter alia:
All offices, positions and employments, which are continued or re-established by this Code, are transferred to the respective departments, offices and agencies to which their functions are allocated and assigned by this Code.
Employees of the former Welfare Board were assimilated as employees of Essex County in the Division of Welfare. Essex County ("County") was a participant in the State Health Benefits Program, but never adopted any resolution pursuant to N.J.S.A. 52:14-17.38 for payment of health benefits coverage of county retirees.
The transfer of welfare functions was provided under Article 14 of the Essex County Administrative Code, which was adopted effective May 1, 1979. Section 14.1(I) sets forth the various autonomous County agencies whose functions were not *278 changed by the Code. Section 14.1(II) sets forth various County agencies, boards and commissions whose functions were transferred to and assumed by departments of the Essex County government, including the Welfare Board whose functions were assumed by the Department of Citizen Services, Division of Welfare.
After the welfare functions became part of county government on May 1, 1979, the County, through its Division of Welfare, continued to reimburse health insurance costs for retirees of the Welfare Board who had been receiving such retirement benefits from the Board prior to May 1, 1979. The County of Essex does not have, and has not had, an employment policy like that of the Welfare Board Resolution 74-12-3. After the County welfare operations and personnel were transferred to the County Division of Welfare on May 1, 1979, the County continued to pay health benefits for those former Welfare Board retirees who had been receiving such benefits prior to May 1, 1979; however, reimbursement for Medicare Part B premiums for such Welfare Board retirees did not continue after May 1, 1979. In addition, employees of the Division of Welfare who retired from County employment between May 1, 1979 and January 1, 1985 and met the retirement service criteria of Resolution 74-12-3 began to receive paid health benefits but not Medicare Part B reimbursement. No explanation as to why or how these payments continued to be made has been provided by the County, nor why Medicare Part B premiums were not continued.
When the County Administration realized that certain welfare retirees were receiving County paid health benefits not afforded other County retirees, they requested an opinion of County Counsel, which concluded that providing health insurance retirement benefits to one group of retirees and not to others was contrary to State policy set forth in N.J.S.A. 40A:10-23. The County unilaterally discontinued payment of health benefits coverage to welfare retirees as of January 1, 1985, which action resulted in the suit by one such retiree. See *279 Gauer v. Essex County Div. of Welfare, 108 N.J. 140, 528 A.2d 1 (1987), where the Supreme Court held that the County was bound by the resolution of the Welfare Board to reimburse the health insurance premiums of employees who retired with twenty-five years or more of service.
Although the County sent a notice to the employees who had retired that it was terminating such benefits, it did not send a notice to employees, such as plaintiffs, who were still employed.
The County, by resolution, on April 27, 1988 terminated its participation in the State Health Benefits Program, because it believed it could afford better service for less costs but indicated that "the county will continue to provide the current level of employee health benefits coverage by way of a self-insurance and reinsurance health benefits plan."
Plaintiff Louis DeBello became employed by the Essex County Welfare Board on August 24, 1959, continued said employment until transferred to the County of Essex on May 1, 1979, and thereafter until his retirement on April 1, 1992 with more than twenty-five years of service. When DeBello was finishing graduate school while employed by the Essex County Welfare Board, he learned of the 1974 resolution. Relying thereon he decided to forgo his doctorate which would have taken six to eight years to complete.
The County has advised DeBello that his medical benefits will be terminated at the end of the first year of his retirement, i.e., April 1, 1993.
Plaintiff David H. Weiner became employed by the Essex County Welfare Board in July 1977, continued said employment until transferred to the County of Essex on May 1, 1979, and is still so employed. He is president of Local 1081 of the Communications Workers of America, AFL-CIO, the collective bargaining representative.

*280 II.
Plaintiffs brought this action "as class representatives of the former Essex County Welfare Board", seeking an adjudication that upon retirement the County is legally required to provide them with paid health insurance coverage and to reimburse them for their Medicare Part B payments conferred by the 1974 Welfare Board resolution and to declare null and void the termination of these benefits as of January 1, 1985.
Defendant's answer asserted three affirmative defenses: res judicata, collateral estoppel and the time bar of R. 4:69-6 (limitation on bringing actions in lieu of prerogative writs).
On May 26, 1989, defendant's motion for summary judgment was granted which dismissed plaintiffs' complaint on the grounds of res judicata and collateral estoppel. Plaintiffs' motion to certify the matter as a class action, pursuant to R. 4:32-1, was denied. The Appellate Division, in an unreported opinion, reversed and remanded the matter, urging the Law Division judge to explore the question of ripeness of these claims for adjudication because the Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq., affords "expeditious relief from uncertainty with respect to rights when claims are in genuine conflict." Bell v. Stafford Tp., 110 N.J. 384, 391, 541 A.2d 692 (1988). At the time of the appeal neither DeBello nor Weiner had earned twenty-five years of service as a county welfare employee. Now DeBello has earned twenty-five years of service and retired.
However, Weiner must work another ten years before he is eligible for retirement. Intervening events, such as death, discharge or resignation frequently render moot the question of eligibility for post-retirement benefits. The Declaratory Judgments Act cannot be used to decide or declare the rights or status of parties upon a state of facts which are future, contingent and uncertain. Civil Serv. Comm. of N.J. v. Senate of N.J., 165 N.J. Super. 144, 148, 397 A.2d 1098 (App.Div. 1979), certif. den. 81 N.J. 266, 405 A.2d 811 (1979).
*281 In accordance with the suggestion of the Appellate Division in its reversal herein, the court will treat this lawsuit, not as a class action, but, as a "test case" which provides a superior method of adjudicating this controversy. Kronisch v. Howard Savings Inst., 143 N.J. Super. 423, 427, 363 A.2d 376 (App.Div. 1976).
After the testimony concluded the County abandoned its three affirmative defenses as well as the original basis for terminating the benefits of the original resolution: discrimination. After the plaintiffs submitted their post-trial brief, the County now asserts four additional defenses: (1) plaintiffs have no rights against the County under the subject resolution under Sections 14.5 and 14.6 of the County Administrative Code; (2) the holding in Gauer does not support plaintiffs' position; (3) the subject resolution was ultra vires; and (4) since the County is no longer in the State Health Benefits Program, the subject resolution would be inapplicable to plaintiffs even if it were otherwise binding on the County.

III.
On June 20, 1985, the Attorney General of New Jersey, through a deputy attorney general, issued an informal opinion[2] (AAAM85-6471, dated June 20, 1985) to the Director of the Division of Pensions of the State of New Jersey which concluded that:

*282 Essex County, as the successor to the former Essex County Welfare Board, is obliged to continue payment for the health benefits coverage of those retirees of the county welfare agency who come within the scope of the 1974 resolution of the Essex County Welfare Board.
The County objects to the court's consideration of this opinion, as being inadmissible hearsay, contending that the court may not take judicial notice of it under Evid.R. 9(2)(a) because it is not a duly enacted and published formal Attorney General's Opinion. Obviously, it was issued, but it was not published in the bound blue book of formal opinions. The reason that a formal Attorney General's Opinion may be judicially noticed by the courts pursuant to Evid.R. 9(2)(a) is that it has received supervisory approval and is published and distributed to the Bar (law schools, bar association libraries, county law libraries, etc.) and easily obtained. An informal opinion is known only to the parties involved and filed someplace in the Attorney General's Office.
This letter opinion of a deputy attorney general, not having been approved and published as an official formal opinion of the Attorney General, remains only the opinion of an attorney who has no standing in this case. There is no proof herein that this informal opinion had any supervisory approval. Therefore, it constitutes inadmissible hearsay.

IV.
The lack of a general resolution for the entire county is of no significance. As required by the governing regulations, the resolution adopted in 1974 by the former Essex County Welfare Board explicitly provided that payment of the health benefits premiums for eligible retirees would apply to all eligible present and future pensioners of the agency and would continue for as long as the State paid the cost of the comparable benefits for its eligible pensioners. The obligations assumed by this resolution were not extinguished by the abolition of the autonomous Welfare Board and its restructuring within the government of Essex County. Gauer v. Essex County Div. *283 of Welfare, supra, 108 N.J. at 148, 528 A.2d 1. To the contrary, it is well established that obligations incurred pursuant to lawful authority by the governing body of a municipality or a county will "bind the hands of future city and county officers." Terminal Enterprises, Inc. v. City of Jersey City, 54 N.J. 568, 575, 258 A.2d 361 (1969); see also Maese v. Snowden, 148 N.J. Super. 7, 14, 371 A.2d 802 (App.Div. 1977). Agreements and undertakings made binding by statutory authority upon one governmental agency will likewise be binding upon its successor. Gober v. Pemberton Tp., 185 N.J. Super. 323, 335, 448 A.2d 516 (Law Div. 1982). This principle corresponds with the settled rule of corporate succession whereby the successor body assumes the duties and liabilities of its predecessor. State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 503, 468 A.2d 150 (1983); N.J.S.A. 14A:10-6(e), 15A:10-6(e).
Intent of Legislature under the Optional County Charter Law was to permit counties which adopted law by referendum to totally centralize all phases of county government. N.J.S.A. 40:41A-1 et seq. Union Cty. Park Comm. v. Cty. of Union, 154 N.J. Super. 213, 381 A.2d 77 (Law Div. 1976), aff'd 154 N.J. Super. 125, 381 A.2d 33 (App.Div. 1977).
Furthermore, the Optional County Charter Law, while granting sweeping power to counties to restructure their form of government, was not intended to alter basic preexisting or continuing obligations which a county or any of its agencies has to the State. Angelo v. Shapiro, 168 N.J. Super. 459, 466, 403 A.2d 496 (Law Div. 1979); Union Cty. v. State, 149 N.J. Super. 399, 413, 373 A.2d 1037 (Law Div. 1977); Am. Fed. State, Cty. Mun. Emp. v. Hudson Welf. Bd., 141 N.J. Super. 25, 31, 32-33, 357 A.2d 67 (Ch.Div. 1976). Indeed, the Optional County Charter Law explicitly states that any county's powers are "... subject to the provisions of ... general law ..." N.J.S.A. 40:41A-27 and must be "... consistent with the Constitution of New Jersey and with general law relating to *284 local government." N.J.S.A. 40:41A-30. Thus, in State v. Hudson Cty., 161 N.J. Super. 29, 48-52, 390 A.2d 720 (Ch.Div. 1978), aff'd, 171 N.J. Super. 453, 409 A.2d 1164 (App.Div. 1979), the court ruled that a county which abolished its welfare board and assumed direct administration of the welfare program under the Optional County Charter Law, nevertheless, remained subject to a regulation previously promulgated by the State Division of Welfare governing personnel standards and compensation of employees of county welfare agencies. Clearly, duties imposed upon a county pursuant to a general state law, or obligations validly assumed under statutory authorization, remain unaffected by a county reorganization. Id. 161 N.J. Super. at 49, 390 A.2d 720; see also Union Cty. v. State, supra, 149 N.J. Super. at 413, 373 A.2d 1037.
In this instance, once the Essex County Welfare Board passed the adopting resolution pursuant to L. 1974, c. 88 and its implementing regulations, N.J.A.C. 17:9-5.5(a), the Board and its successors became bound to honor the subject Resolution. The fact that the Board voluntarily undertook this obligation does not detract from its legitimacy. The resolution was adopted pursuant to a general law, available to all local agencies participating in the State Health Benefits Program, and contained conditions of participation which were mandated by State regulation. Moreover, succession to the obligations assumed in the resolution is not inconsistent with the Optional County Charter Law, which was intended to permit increased efficiency in county operations, but with minimal employee disruption particularly in those areas which do not conflict with existing State programs. State v. Hudson Cty., supra, 161 N.J. Super. at 50-51, 390 A.2d 720. The preservation of legitimate employee retirement benefits has been expressly recognized by the Charter Law in N.J.S.A. 40:41A-129 which states that the adoption of any reorganization plan "... shall not ... adversely affect the civil service tenure, pension, seniority or promotional rights of any county officer or employee in the classified service." Where, as here, a program of entitlement *285 to certain retirement benefits was previously created pursuant to State law for all eligible present and future pensioners of the employers to continue as long as the State is paying the cost of its eligible pensioners, the program remains binding upon any successor. State v. Hudson Cty., supra, 161 N.J. Super. at 52, 390 A.2d 720.
Accordingly, absent express legislative modification of L. 1974, c. 88 or the cessation of State payments for its eligible pensioners, the obligation incurred by the Essex County Welfare Board became binding upon the County itself when it succeeded the county welfare agency through reorganization. The court is mindful that on September 18, 1984, Essex County Counsel opined that the County could not continue payment of the health insurance premiums for eligible employees of the county welfare agency because he thought that it constituted illegal discrimination against other county employees. In reaching this conclusion, counsel relied upon the provision in N.J.S.A. 52:14-17.28 that the State Health Benefits Commission "shall not enter into a contract under this act unless ... coverage is available to all eligible employees and their dependents ..."
This provision calls for uniformity in coverage to all "eligible" employees with respect to contracts to be made on a prospective basis for the benefit of employees of the State and local employers. That does not equate with requiring uniformity for virtually all county employees, regardless of pre-existing obligations assumed by an agency for a discrete group of employees who eligibility has been defined by the terms of a resolution previously adopted in compliance with regulations of the State Health Benefits Commission. Unlike the situation in N.J. Policemen's Benev. v. N.J. Health Ben., 153 N.J. Super. 152, 379 A.2d 285 (App.Div. 1977), this case does not involve the initiation of a new health benefits program never previously afforded to employees of a participating employer. Rather, it involves the maintenance of obligations lawfully assumed by a *286 predecessor agency for its eligible employees. This case also does not pertain to restrictions on coverage emanating from the terms of a collective bargaining agreement, as in the case of N.J. Policemen's Benev., supra. This case entails the coverage of a distinct group of employees of a distinct employer agency which established uniform standards of eligibility at the time the coverage was initially provided, and did so in accordance with the requirements of general state law. The obligations assumed by the former Essex County Welfare Board not only fully conform with the uniformity in the availability of benefit coverage required by N.J.S.A. 52:14-17.28, but are obligations incurred pursuant to lawful authority which are binding upon the successor to the county welfare agency.
The County herein merely changed the character of the entity or department that administered welfare. On August 1, 1985, the then Essex County Counsel advised the State of New Jersey, Department of Treasury, Division of Pensions that the County's decision to discontinue reimbursement of health insurance costs to certain retired welfare employees should be considered "by analogizing the transfer of the welfare employees from employment by the Essex County Welfare Board to employment by the County of Essex as a transfer of employment of employees covered under the State Health Benefits Program from one participating employer to another as provided for under health benefits regulation N.J.A.C. 17:9-2.9."

V.
In Gauer v. Essex County Div. of Welfare, supra, the Supreme Court was "* * * persuaded that the reimbursement of health insurance premiums to long-standing employees was intended at least in part as compensation for extended tenure" and that "* * * these retirement benefits were sufficiently compensatory to afford the plaintiff some interest in their preservation." Id. 108 N.J. at 150, 528 A.2d 1.
*287 Here, as in Gauer, pension benefits were not modified in the interest of assuring the integrity of the pension system. Accordingly, "* * * it seems clear that they cannot be rescinded unilaterally when the underlying motivation is not preservation of the integrity of the benefit system but the erroneous belief that the benefits must be discontinued." Id. at 150, 528 A.2d 1.
The Supreme Court quoted from Spina v. Consolidated Police, etc., Pension Fund Com., 41 N.J. 391, 197 A.2d 169 (1964) at 402, 197 A.2d 169:
... We have no doubt that pension benefits are not a gratuity ... And we think the employee has a property interest in an existing fund ... Gauer, 108 N.J. at 150, 528 A.2d 1.
Our courts have long held that such property rights cannot be terminated without a hearing on notice and adequate opportunity to be heard, none of which was afforded to plaintiffs.
The right to enforcement is an interest of substance which the law protects as a property right while the statute continues in existence. Under the pension grant here and the underlying statute, respondent became entitled of right to each periodic installment as and when it accrued, so long as the statute remains in force; and the vacation of the grant itself and the denial of the pension claim for the supposed want of the statutory qualifications constituted the exercise of what purported to be judicial power without a hearing on notice to the pensioner and adequate opportunity to be heard, in disregard of the Federal and State constitutional guaranties of due process of law. McFeely v. Board of Pensions Com'rs, 1 N.J. 212, 216, 62 A.2d 686 (1948).
In the Second Count of plaintiffs' complaint, they specifically pleaded these due process claims of violation of their constitutional guarantees. Plaintiffs testified that they did not receive prior notice of the termination of said benefits nor were they afforded an opportunity to be heard. "Due process of law" includes reasonable notice of the nature of the proceeding and a fair opportunity to be heard therein. Fantony v. Fantony, 36 N.J. Super. 375, 378, 115 A.2d 610 (Ch.Div. 1955), modified 21 N.J. 525, 122 A.2d 593 (1956). Both the Federal and State constitutions afford the right to a hearing where governmental action affects an individual's property interests. Tp. of Montville v. Block 60, Lot. 10, 74 N.J. 1, 18, 376 A.2d 909 (1977).
*288 Since the County failed to comply with the basic requirements of due process, its action in terminating the property rights of the plaintiff DeBello was illegal and is set aside.

VI.
The County is collaterally estopped from asserting the defenses that it did not specifically assume these obligations when it restructured the Welfare Board and that the Welfare Board resolution was ultra vires. Plaintiffs have asserted authority for relief under Sections 14.5 and 14.6 of County Administrative Code. Section 14.5 provides that the rates of compensation for persons employed as of May 1, 1979, the effective date of the Code, "shall be continued with respect to the office, position or employment to which they, respectively, may be transferred." The County contends that this provision refers only to the salaries that employees were receiving from the Welfare Board prior to their transfer to the County's employ, by operation of law, not to the incidental, future fringe benefits that had been provided under Board resolution 74-12-3.
Section 14.6 deals with "Pension Rights" and provides, inter alia:
Pension fund membership and rights of any officer or employee shall not, without his/her consent, be adversely affected by any transfer pursuant to the Code.
As of May 1, 1979, and today, all employees of the County of Essex and of any autonomous governmental County agency, like the former County Welfare Board, were members of one of three governmental pension funds, i.e., the County Pension System established under N.J.S.A. 43:10-18.1, et seq., or the State Public System Employees Retirement System (P.E.R.S.), established under N.J.S.A. 43:15A-1, et seq., or, for County law enforcement personnel, the State Police and Firemen's Retirement System, (P.F.R.S.) established under N.J.S.A. 43:16A-1, et seq. Section 14.6 continued and maintained the pension fund benefits under these pension funds for employees, like DeBello *289 and Weiner, transferred to another governmental employer pursuant to the County reorganization.
The benefit provided under Welfare Board resolution 74-12-3 was a form of compensation due upon retirement in that the paid health benefits for Welfare Board employees eligible thereunder are only to be effective if and when such employees otherwise retire under a governmental pension system. Such benefit is not provided under any of the three pension funds because it is not a pension. The County contends that it does not come within the scope of Section 14.6, which was intended to protect the pension rights provided by State law equally to all governmental employees affected by the reorganization; not to protect or continue any particular fringe benefit that might have been provided by any of the various autonomous County agencies that were abolished under the Administrative Code, Section 14.1(II), and of which the County Board of Chosen Freeholders would not even have known when it promulgated Section 14.6 of the Administrative Code.
The County's contention that by adopting the Administrative Code it agreed to pay only "salaries" and not medical benefits now or upon retirement is illogical and not supported by a fair interpretation of Section 14.5 of the County Administrative Code.
"The essence of the doctrine of collateral estoppel is to preclude relitigation in a subsequent action of a factual issue fully and fairly litigated in a prior one." Harbor Land Development Corp., Inc. v. Mirne, 168 N.J. Super. 538, 541, 403 A.2d 937 (App.Div. 1979), citing United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977). In order for the doctrine of collateral estoppel to apply and to preclude an issue from being relitigated, all that is necessary is that the party precluded had a full and fair opportunity to be heard on the issue in the prior proceeding. It is not necessary that the parties to the subsequent action be identical to the *290 parties in the prior action. Eatough v. Bd. of Medical Examiners, 191 N.J. Super. 166, 175, 465 A.2d 934 (App.Div. 1983).
The case of N.J. Manufacturers Insurance Co. v. Brower, 161 N.J. Super. 293, 391 A.2d 923 (App.Div. 1978) similarly recognized that the doctrine is not rendered inapplicable where the parties are not identical.
A party precluded from relitigating an issue with an opposing party, ..., is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action... [Restatement, Judgments 2d § 88 (Tent. Draft No. 2 (April 15, 1975))] Id. at 298, 391 A.2d 923.
Plaintiffs DeBello and Weiner do not have to have been a party to the prior proceedings to benefit from collateral estoppel. Id. at 299, 391 A.2d 923.
In Gauer v. Essex County Div. of Welfare, supra, the validity of the Welfare Board resolution was directly in issue before the Law Division, Appellate Division and Supreme Court. At that time defendant County of Essex was afforded a full and fair opportunity to litigate the validity of that resolution. The County had every reason to make its defense as vigorous and effective as possible.
In the instant case, defendant asserts new defenses which it has not pleaded in an attempt to nullify the resolution which was upheld in the prior proceeding. It has been conclusively established that the resolution in question is valid. Defendant cannot now make a last ditch effort to have the same declared invalid. Since this issue has been previously litigated, the County is barred from relitigating the issue necessarily decided in the earlier action.
Defendant has raised a myriad of new defenses after remand by the Appellate Division and the conclusion of the trial. The advancing of these defenses at this late time raises questions of waiver and res judicata.
A defendant's decision not to raise a defense in the trial of a particular action is a waiver of that defense, which waiver is granted res judicata effect. Kilbarr Corp. v. Business *291 Systems, Inc. B.V., 679 F. Supp. 422, 427 (D.N.J. 1988). Likewise, the failure to raise a defense in defendant's resistance to plaintiffs' appeal herein constituted a waiver of such defense.
All affirmative defenses and denials must be pleaded, R. 4:5-4, or, when appropriate, raised by motion under R. 4:6-1, or they will be waived. A party may avoid waiver by timely seeking leave from the court to interpose an affirmative defense that has been omitted. R. 4:9-1.
A defense that has not been raised in a pleading, by motion or at trial, normally will be considered waived. Winans-Carter Corporation v. Jay & Benisch, 107 N.J. Super. 268, 272-273, 258 A.2d 131 (App.Div. 1969). Pressler, N.J. Current Court Rules, Comment R. 4:6-7.
There is no basis for the County's belated claim that the subject 1974 resolution was ultra vires because it provided contingent additional future compensation for employees services, unfunded from current appropriations.
The enabling legislation for county welfare boards provides that the power and authority of welfare boards to commit to compensation to their employers shall be limited by and to the annual appropriations provided to such welfare boards by the respective counties. With regard to welfare boards established under Chapter 4 of Title 44, N.J.S.A. 44:4-35 provides:
The county welfare board shall fix the salaries of the director of welfare and such other officers, assistants and employees within the limits of the appropriations made therefor by the board of chosen freeholders, and such salaries shall be compensation in full for all services rendered.
With regard to welfare boards established under Chapter 7 of Title 44, N.J.S.A. 44:7-9 provides that the boards "may also determine the compensation of the director and other employees within the limits of the sums made available for that purpose by the board of chosen freeholders and the State, as hereinafter provided."
In fact the Supreme Court clearly stated that:

*292 N.J.S.A. 40A:10-23 does not bar the continued payment, to the plaintiff and others similarly situated, of the retirement benefits in question pursuant to the reimbursement scheme adopted by the autonomous predecessor board pursuant to state regulations.
Gauer v. Essex County Div. of Welfare, supra, 108 N.J. at 148, 528 A.2d 1.
Therefore, this court need not determine the applicability of these statutes because the Supreme Court has already upheld the validity of this resolution. Since the County never raised this issue in that case, they are collaterally estopped from raising it in this case.

VII.
Although the County contends that Gauer, supra, applies only to those employees who had retired prior to May 1, 1985, the Supreme Court consistently used wording clearly indicating that the reasoning applies equally to those employees hired while the 1974 resolution was in effect.
In discussing the County's position that all county employees are similarly situated so that the uniformity requirement must be extended to all, the Supreme Court stated that:
* * * [t]he distinction suggested by the question might justify withholding these particular benefits with respect to those employees hired after the reorganization, whose terms and conditions of employment, including compensation and retirement benefits would be governed by their employment contract. It does not, however, justify rescinding these benefits as applied to former employees who had been hired  and/or retired  by the predecessor agency under different employment conditions. Id., 108 N.J. at 147, 528 A.2d 1.
The Court continued that:
[e]mployees who worked for the former Board as well as the successor Division were hired and/or served out their employment and retired under a particular compensation scheme governing their employment. They stand on a distinctively different footing from any employees who were thereafter hired or continued to be employed up to the point of retirement under a different compensation/benefit scheme. Id. at 148, 528 A.2d 1.
[T]he resolution awarding compensation pursuant to the statute with respect to employees who were hired by the Board and/or served out their employment and retired under the resolution's provisions should be honored. Id. at 150, 528 A.2d 1.
*293 Herein, as in Gauer, "* * * the rescission of the plaintiff's retirement benefits was not authorized * * * (and) the county is bound by the Welfare Board's 1974 resolution." Id. at 151, 528 A.2d 1.

VIII.
Essex County Welfare Board resolution 74-12-3 provides that the Board would pay for health insurance benefits provided under the State Health Benefits Program for those retired Board employees with 25 or more years of service credited in a governmental retirement system who had or will retire. The title of the resolution states that it is to provide for payment of premium charges for certain Board employees "covered by the New Jersey State Health Benefits Program." Paragraphs 1 and 2 of the resolution acknowledge the Board's election to be in the State Program and its intent to comply with State Health Benefits Commission regulations. Paragraph 3, which deals with the payment for coverage of retirees states:
3. We hereby agree to pay the premium or periodic charges for the benefits provided to all eligible retired employees and their dependents covered under the program, but not including survivors, if such employees retired from a State or locally administered retirement system effective after the date the employer adopted the State Health Benefits program on a benefit for 25 years or more of service credited in such retirement system ... (Emphasis added).
The County of Essex ceased its participation in the State Health Benefits Program in 1988. The County contends that when plaintiff DeBello retired in 1992, such retirement was not "after the date the employer adopted the State Health Benefits program" and, therefore, DeBello would not have been entitled to benefits under Resolution 74-12-3 even if it were otherwise binding on the County. Contrary to the County's belief, the attempted exclusion of DeBello under the Resolution is different in principle from the Resolution's exclusion of Board employees who had retired with 25 or more years of service before the Board elected to participate in the State Health Benefits Program.
*294 DeBello did retire after the County adopted the State Health Benefits Program. The fact that the County chose later to adopt its own program did not nullify DeBello's rights and expectations under which he was employed. This contention is merely another attempt by the County to avoid complying with the subject resolution. The requirement for eligibility was only that the benefits be provided only after the employer adopted the State Health Benefits Program  whether or not the employee "retired from a State or locally administered retirement system." DeBello did retire from a locally administered retirement system established by the County in 1988.

IX.
Since DeBello is the only named plaintiff who has earned the retirement benefits of twenty-five years of service, the County is ordered to continue to provide him with such benefits.
Since Weiner has not earned such retirement benefits, his complaint is dismissed without prejudice and without costs.
NOTES
[1] We hereby agree to pay the premium or periodic charges for the benefits provided to all eligible retired employees and their dependents covered under the program, but not including survivors, if such employees retired from a State or locally administered retirement system effective after the date the employer adopted the State Health Benefits program on a benefit based on 25 years or more of service credited to such retirement system, excepting the employees who elected deferred retirement, but including the employees who retired on disability pension based on fewer years of service credited in such retirement system and also to reimburse such retired employees for their premium charges under Part B of the Federal Medicare Program covering the retired employees and their spouses in accordance with the regulations of the State Health Benefits Commission.
[2] There are three types of opinions, formal, informal and memorandum, issued by the Attorney General. This system was instituted by Attorney General Theodore D. Parsons in 1949 at the suggestion of Governor Alfred E. Driscoll. The first volume of opinions contains all the formal opinions rendered in the name of the Attorney General between February 23, 1949 and December 31, 1950. A formal opinion is not issued unless the writer and the two other members of the Attorney General's Opinion Committee (previously the Opinion Board) agree to it. While any one of the three types of opinions has efficacy for its own purpose, an informal opinion or a memorandum opinion usually applies to a particular set of facts and they have no continuing effect as precedent. See Preface to Attorney General's Opinions (1949 & 1950).