FRANK GAUER, INDIVIDUALLY AND AS CLASS REPRESENTA-TIVE OF THE ESSEX COUNTY WELFARE BOARD AND DIVI-SION RETIREES, PLAINTIFF-APPELLANT, v. ESSEX COUNTY DIVISION OF WELFARE, DEFENDANT-RESPONDENT.

Argued March 30, 1987—Decided July 27, 1987.

---

142

*Ronald Reichstein* argued the cause for appellant (*Beck, Reichstein & Guidone,* attorneys).

*Norman Schulaner,* Assistant County Counsel, argued the cause for respondent (*David H. Ben-Asher,* Essex County Counsel, attorney).

The opinion of the Court was delivered by

HANDLER, J.

The Division of Welfare of the County of Essex discontinued certain benefits that it had been paying to certain retired employees. As a result, plaintiff, a retired employee aggrieved by this decision, brought suit on behalf of other similarly

situated retired employees challenging its validity. The narrow issue raised by this litigation is the statutory authority of Essex County to terminate the retirement benefits previously granted to the subject employees on the basis that *N.J.S.A.* 40A:10–23 mandates that all retirees of the county receive uniform treatment.

I.

The benefits that are the subject of this litigation were provided for more than ten years prior to the decision to discontinue them. On December 3, 1974, the Essex County Welfare Board, the predecessor of the defendant, Division of Welfare, adopted Resolution No. 74–12–3, pursuant to regulations promulgated by the State Health Benefits Commission under *N.J.S.A.* 52:14–17.38. This Resolution authorized the Board, which was at the time an autonomous agency expressly designated as a corporate entity by *N.J.S.A.* 44:7–7, to reimburse those employees who retire with twenty-five or more years of service for their health insurance and Medicare Part B premiums upon retirement. The Board notified its employees of the Resolution. Plaintiff Gauer was an employee of the Board when these benefits were authorized.

On May 1, 1979, pursuant to the Optional County Charter Law, *N.J.S.A.* 40:41A–1 to –147, Essex County reorganized its form of government. The Welfare Board was abolished as an autonomous body and its functions were assumed by the Essex County Division of Welfare. Pursuant to its reorganization, the County promulgated an Administrative Code that spelled out the abolition of various autonomous boards and specified which county agencies would assume the functions of the abolished boards. The Administrative Code also delineated the rights of employees of the boards who were transferred to county employment. Section 14.6 provided specifically that "Pension Fund membership and rights of any officer or employee shall not ... be adversely affected by any transfer pursuant

to the Code." The County, through the Division of Welfare, continued to reimburse health insurance costs for retirees of the Welfare Board who had been receiving such retirement benefits from the Board. It also began to reimburse such health insurance and Medicare premium costs to Division of Welfare employees who retired from County employment with twenty-five years or more service in a state or locally administered retirement system in accordance with the earlier Resolution.

In 1981, plaintiff, then a County employee in the Division of Welfare, retired from County employment. He received reimbursed premium costs for health insurance and Part B Medicare as part of his retirement benefits. In 1984, specifically by a letter dated December 3, 1984, the County decided to discontinue its reimbursement of health insurance and medicare costs of retired welfare employees effective January 1, 1985. Its decision was in reliance upon legal opinion of the Essex County counsel stating the County could not, under *N.J.S.A.* 40A:10-23, discriminate among retired County employees in the provision of health insurance benefits.

Plaintiff brought suit against the County, and the County moved for summary judgment, which was granted. *Gauer v. Essex County Div. of Welfare,* 205 *N.J.Super.* 592 (Law Div. 1985).[1] Plaintiff then moved for relief from the adverse summary judgment in order to have the court consider the impact of *Woolley v. Hoffman-La Roche, Inc.,* 99 *N.J.* 284, modified, 101 *N.J.* 10 (1985). The court denied the motion.

Plaintiff appealed to the Appellate Division. In a *per curiam* decision, the Appellate Division affirmed the summary judgment for defendant and the denial of plaintiff's post-judgment motion. *Gauer v. Essex County Div. of Welfare,* 211 *N.J.Su-*

---

[1]Plaintiff instituted suit as a class action on behalf of other retirees and current employees of the Division of Welfare. Prior to the grant of summary judgment the action had not been certified as a class action.

*per.* 706 (App.Div.1986). Plaintiff filed a petition for certification, which was granted. 105 *N.J.* 545 (1986). We now reverse.

## II.

We approach this case initially by focusing upon whether the rights and obligations of the respective parties are governed by operative statutory provisions. Plaintiff claims that the County, as the successor of the Essex County Welfare Board, is still liable for the amount of health insurance premiums paid by retired welfare employees and that its liability is unaffected by the reorganization of the County and the abolition of the Board under the Optional County Charter Law, *N.J.S.A.* 40:41A–1 to –147. Defendant, on the other hand, claims that continuing to pay the benefits in question would run afoul of the statutory requirement of *N.J.S.A.* 40A:10–23 that benefits be distributed uniformly among retirees. Defendant claims, in effect, that (1) reorganization was authorized under the Optional County Charter Law; (2) the Optional County Charter Law empowered it to abolish the Welfare Board; and (3) once the County had assumed the functions of the Welfare Board, the requirement of *N.J.S.A.* 40A:10–23 that retirement benefits be distributed uniformly among retirees was necessarily implicated, thus requiring the County either to rescind the benefits adopted by the Welfare Board or to extend them to all County employees.

Counties have been granted broad power under the Optional County Charter Law, *State v. County of Hudson,* 161 *N.J.Super.* 29, 43 (Ch.Div.1978), aff'd, 171 *N.J.Super.* 453 (App. Div.1979). This includes the power to restructure county governments, *N.J.S.A.* 40:41A–30; *Shapiro v. Essex County,* 177 *N.J.Super.* 87, 99 (Law Div.1980), aff'd, 183 *N.J.Super.* 24 (App.Div.), aff'd, 91 *N.J.* 430 (1982); *Board of Trustees v. Sypek,* 151 *N.J.Super.* 1, 10 (Law Div.1977), rev'd on other grounds, 160 *N.J.Super.* 452 (App.Div.), certif. den., 78 *N.J.* 327 (1978); *American Fed'n of State, County and Mun. Employees v. Hudson County Welfare Bd.,* 141 *N.J.Super.* 25, 31

(1976); *Union County Park Comm'n v. County of Union,* 154 *N.J.Super.* 213, 224 (Law Div.1976), aff'd, 154 *N.J.Super.* 125 (App.Div.), certif. den., 75 *N.J.* 531 (1977). Under the law counties are authorized to abolish welfare boards. *State v. County of Hudson, supra,* 161 *N.J.Super.* at 44.

Plaintiff argues, however, that a reorganized county remains subject to obligations assumed pursuant to state regulations by autonomous predecessor agencies. This argument was made and endorsed by the Chancery Division in *State v. County of Hudson, supra,* 161 *N.J.Super.* at 32–33. In *Hudson,* the court considered whether Ruling 11, a state employment compensation regulation concerning the salaries of welfare board employees, was binding on the County of Hudson notwithstanding the County's reorganization and the abolition of the welfare board under the Optional County Charter Law. The court determined that Ruling 11 was binding on the County because it was not inconsistent with the Optional County Charter Law and because it was partly on mandate of federal welfare law. *Id.* at 51–52.

The Law Division in this case believed that *County of Hudson* is distinguishable in part because (1) in this case retired employees must be treated in an evenhanded manner; and (2) "Ruling 11 deals with compensation for welfare board employees, not retirees." 205 *N.J.Super.* at 598. The Law Division reasoned, in effect, that under the Optional County Charter Law, because the governing body is the County, not the Welfare Board, the requirement of uniform treatment extends to county employees and prevents the County from paying the benefits to some employees and not to others. Relying on this rationale, the County asserts that payments to plaintiff must be terminated because, under *N.J.S.A.* 40A:10–23, it cannot discriminate in providing benefits to its employees.

▪ *N.J.S.A.* 40A:10–23 provides that if an employer assumes the cost of health insurance coverage for retired employees, it must provide the coverage "under uniform conditions."

There is some language in the legislative history of *N.J.S.A.* 40A:10–23 indicating that retired employees were to receive uniform treatment; the Senate County and Municipal Government Committee Statement to Assembly Bill 1573 (*L.*1983, c. 364) states that "[s]hould a governing body determine to pay such insurance premiums, the policy must be applied uniformly to all qualified employees." The problem raised by this case is that once the County had reorganized pursuant to the Optional County Charter Law and subsumed the functions of the Welfare Board, *N.J.S.A.* 40A:10–23 was implicated, and the number of employees arguably covered by the uniform application requirement was broadened from welfare board employees to county employees generally; while in 1974 the resolution adopted by the Welfare Board as an autonomous employer participating in the State benefits program pursuant to *N.J.S.A.* 52:14–17.38 applied uniformly to all welfare board employees, it is arguable that once the Board's functions were subsumed, the uniformity requirement extended to all county employees.

The more pointed inquiry, however, is whether all county employees are similarly situated so that the uniformity requirement must be extended to all, omitting none; or, to restate the question, whether any group of county employees is uniquely or specially situated so that particularized treatment may be accorded such employees without violating the uniformity standard. The distinction suggested by the question might justify withholding these particular benefits with respect to those employees hired after the reorganization, whose terms and conditions of employment, including compensation and retirement benefits, would be governed by their employment contract. It does not, however, justify rescinding these benefits as applied to former employees who had been hired—and/or retired—by the predecessor agency under different employment conditions. By assuming that the "governing body of the local unit" under *N.J.S.A.* 40A:10–23 was "Essex County, pursuant to the [Optional County Charter Act]," 205 *N.J.Super.* at 596, the courts below in effect avoided the issue. The issue is not

whether the employer is the same, albeit a successor in form, but whether successive employees are similarly situated. Employees who worked for the former Board as well as the successor Division were hired and/or served out their employment and retired under a particular compensation scheme governing their employment. They stand on a distinctively different footing from any employees who were thereafter hired or continued to be employed up to the point of retirement under a different compensation/benefit scheme. The retired former employees thus constitute a distinct group and will represent, in the future, an ever-diminishing class. To the extent that the County employment scheme later deleted insurance cost benefits to employees of the Division, such latter employees were simply governed by a different condition of employment. We are not persuaded, in short, that the distinction between the instant case and *County of Hudson* is of controlling significance. *Hudson* stands for the proposition that "[a]s a general rule, where there are two statutory enactments [one a state regulation pertaining originally to an autonomous Welfare Board, the other a statute pertaining to counties] relating to the same subject, the court must give effect to both if possible," 161 *N.J.Super.* at 51. In this case, we are satisfied that *N.J.S.A.* 40A:10–23 does not bar the continued payment, to the plaintiff and others similarly situated, of the retirement benefits in question pursuant to the reimbursement scheme adopted by an autonomous predecessor board pursuant to state regulations.

III.

The further issue is whether the County may nonetheless unilaterally terminate such benefits. In order to assess this issue, we must consider the nature of the benefit; is it, in other words, a mere gratuity, or are there sufficient policy reasons to require continuation of payment in the absence of proof of a loss of fiscal integrity in the plan?

An early view adopted by the courts in this state was that public employees' retirements benefits were mere gratuities. *Moran v. Firemen's and Policemen Pension Fund Comm'n of Jersey City*, 20 *N.J.Misc.* 479, 483 (Hudson Co.Cir.Ct.1942) (pensions granted by the public authorities are a "gratuitous allowance"); *Hozer v. State*, 95 *N.J.Super.* 196, 199 (App.Div.) ("A pension is bounty springing from the appreciation and gratiousness of the sovereign...."), certif. den., 50 *N.J.* 285 (1967). Chief Justice Weintraub, writing for the Court in *Spina v. Consolidated Police and Firemen's Pension Fund Comm'n*, 41 *N.J.* 391, 401 (1964), reflected growing unease with the attempt to characterize pension benefits at all: "We think there is no profit in dealing in labels such as 'gratuity,' 'compensation,' 'contract,' and 'vested rights.' None fits precisely, and it would be a mistake to choose one and be driven by that choice to some inevitable consequence." In recent years, however, the Court has increasingly emphasized the compensatory nature of pension benefits. *E.g., Uricoli v. Board of Trustees, Police and Firemen's Retirement System*, 91 *N.J.* 62, 72 (1982); *Masse v. Board of Trustees, Pub. Employees Retirement Sys.*, 87 *N.J.* 252, 260 (1981); *Geller v. Department of the Treasury*, 53 *N.J.* 591, 597 (1969); McQuillin, *Municipal Corporations* § 12.142 (1982).

It is arguable, however, that the analogy to pension benefits should not be carried too far; *N.J.S.A.* 40A:10–23 provides explicitly that the assumption of the burden of the benefits at issue is discretionary, and the Senate County and Municipal Government Committee Statement emphasizes that "[t]he bill is permissive and, therefore, does not obligate any local government unit to assume any such insurance costs unless the governing body of the unit determines to do so." We find this argument unpersuasive. While the initial decision to reimburse may be discretionary, the question before us is not whether the decision should have been made, but, given the fact that it was made, what was its purpose and effect. We are persuaded that the reimbursement of health insurance premi-

ums to long-standing employees was intended at least in part as compensation for extended tenure. *See Maywood Educ. Ass'n, Inc. v. Maywood Bd. of Educ.*, 131 *N.J.Super.* 551, 557 (1974) ("[C]ompensation paid to public employees, whatever the label, is not a gift so long as it is included within the conditions of employment either by statutory discretion or contract negotiation"). Hence we are satisfied that, like pensions, these retirement benefits were sufficiently compensatory to afford the plaintiff some interest in their preservation.

■ While it has been held, moreover, that pension benefits can be modified in the interest of assuring the integrity of the pension system despite the compensatory aspect of their nature, it seems clear that they cannot be rescinded unilaterally when the underlying motivation is not preservation of the integrity of the benefit system but the erroneous belief that the benefits must be discontinued. *Cf. Spina v. Consolidated Police and Firemen's Pension Fund Comm'n, supra,* 41 *N.J.* at 402 (Weintraub, C.J.) ("it seems idle to sum up either the public's or the employee's contribution in one crisp word. We have no doubt that pension benefits are not a gratuity.... And we think the employee has a property interest in an existing fund.... The usual situation ... is a fund that cannot meet all of the present and future demands upon it. And the question is whether the Legislature is free to rewrite the formula for the good of all ...").

■ In this case, given the intent expressed in section 14.6 of the Essex County Administrative Code to continue pension rights of board employees after the transfer of functions to the County, and given our holding that there is no transgression of the requirements of *N.J.S.A.* 40A:10–23 in continuing these benefits, the resolution awarding compensation pursuant to the statute with respect to employees who were hired by the Board and/or served out their employment and retired under the resolution's provision should be honored.

## IV.

We need not address the issues of estoppel and due process, nor need we address the impact of *Woolley v. Hoffman-La-Roche, supra,* 99 *N.J.* 284. No other claims concerning the validity of these particular benefits have been raised, and, as noted, we in no way suggest that retirement benefits cannot be modified to preserve the integrity of the benefit system.

We rest our decision on the narrow, wholly statutory ground that the uniform application requirement of *N.J.S.A.* 40A:10–23 neither requires nor justifies terminating benefits afforded to the plaintiff by a predecessor autonomous agency pursuant to state regulations. In the absence of such a justification, and given the compensatory nature of the benefits involved, the rescission of plaintiff's retirement benefits was not authorized. Accordingly, we hold that as to plaintiff Gauer and retirees similarly situated, the county is bound by the Welfare Board's 1974 resolution. The judgment of the Appellate Division is therefore reversed.

*For reversal*—Chief Justice WILENTZ and Justices POLLOCK, HANDLER, O'HERN, GARIBALDI and STEIN—6.

*For affirmance*—None.

Justice CLIFFORD did not participate.