**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4234-16T4

PAUL BARILA, WILLIAM J.
LUDWIG, CANDACE R. KANTOR, and
DENNIS ENRICO,

    Plaintiffs-Respondents,

v.

BOARD OF EDUCATION OF CLIFFSIDE PARK,
BERGEN COUNTY,

    Defendant-Appellant.

_____

    Argued June 5, 2018 – Decided July 10, 2018

    Before Judges Reisner, Mayer, and Mitterhoff

    On appeal from Superior Court of New Jersey,
    Chancery Division, Bergen County, Docket No.
    C-000161-16.

    Robert D. Lorfink argued the case for appellant
    (Fogarty & Hara, attorneys; Stephen R. Fogarty,
    of counsel and on the briefs; Robert D. Lorfink,
    on the briefs).

    Richard A. Friedman argued the cause for
    respondent (Zazzali, Fagella, Nowak, Kleinbaum &
    Friedman, PC, attorneys; Richard A. Friedman and
    Genevieve M. Murphy-Bradacs, of counsel and on
    the brief).

PER CURIAM

Defendant Board of Education of Cliffside Park (Board) appeals from a September 19, 2016 order denying defendant's motion to dismiss and May 16, 2017 orders denying defendant's motion for summary judgment and granting summary judgment in favor of plaintiffs Paul Barila, William J. Ludwig, Candice R. Kantor and Dennis Enrico's (plaintiffs) as to Count I of plaintiffs' Amended Complaint. We affirm.

This matter arises from a collective bargaining agreement negotiated by the Board and the Cliffside Park Education Association (Association) for all teaching staff members employed by the District. The parties stipulate to the facts as follows. Plaintiffs are current and former teachers employed by the Board. Plaintiffs were employed by the Board prior to July 1, 2015, and each had worked for the Board for at least ten years as of July 1, 2015. Plaintiffs are in the bargaining unit and are also members of the Association, which is the exclusive collective bargaining representative for all teaching staff members employed by the District.

Plaintiffs, the Board, and the Association were all parties to a collective bargaining agreement that was in effect from July 1, 2012, through June 30, 2015 (the 2012 Agreement). Article VIII of the 2012 Agreement, which addressed sick leave,

provided: "In accordance with the provisions of N.J.S.A. 18A:30-2, each Teacher shall be entitled to ten (10) sick leave days with full pay in each school year. Unused sick leave days shall, in accordance with the provisions of N.J.S.A. 18A:30-3, be accumulated from year to year with no maximum limit." Article VIII of the 2012 Agreement provided further:

> Any teacher, who, as of the end of any school year beginning with 09-10, has either served the District at least ten (10) years and has retired under the Teachers' Pension and Annuity Fund upon such retirement or has served the District at least twenty-five (25) years and leaves the employ of the Board for any reason, shall be paid according to the table:
>
> Formula for unused sick leave:
>     First 100 days x $125.00/day
>     Second 100 days x $0.00/day
>     Up to next 72 days x $1.75/day
>     Maximum is $25,000.00

Accordingly, any teacher who had either been employed by the Board for at least ten years and retired under the Teachers' Pension and Annuity Fund, or who had been employed by the Board for twenty-five years and left the employ of the Board for any reason, was entitled to compensation, as calculated by a specific formula, for accumulated but unused sick leave, up to a maximum amount of $25,000. Although the 2012 Agreement specified that compensation for accumulated unused sick leave was to begin with the 2009-2010 school year, the parties agree

that an identical provision has appeared in previous collective negotiations agreements for the past twenty years.

As the 2012 Agreement expired at the end of June 2015, the Association and the Board negotiated a successor collective negotiations agreement, which became effective on July 1, 2015 (the 2015 Agreement). The 2015 Agreement modified Article VIII in two significant ways. First, the 2015 Agreement changed the formula for unused sick leave by providing for up to a maximum of 100 days at the rate of $150/day. Consequently, the maximum amount of compensation that a teacher could receive for accumulated but unused sick leave upon retirement under the Teachers' Pension and Annuity Fund, or after twenty-five years of employment, was $15,000. Accordingly, the 2015 Agreement decreased the maximum amount of compensation from $25,000 to $15,000, decreased the maximum number of days of accumulated, but unused, sick days for which teachers could be compensated to 100 days, but increased the rate per day for these 100 days from $125 to $150.

The parties agree that the Association knowingly bargained for the modified accumulated sick leave provision in the 2015 Agreement. The parties also agree that the Association did not seek or secure plaintiffs' permission prior to negotiating the modification to Article VIII. To the contrary, several

teachers, including plaintiffs, objected to the modifications upon learning of the changes to Article VIII. Notwithstanding these objections, the Association ratified the 2015 Agreement by adopting a resolution approving it on April 27, 2016.  None of the plaintiffs voted to ratify the 2015 Agreement and they continued to object to the new Article VIII.

Additionally, the parties stipulate as to the particular impact of Article VIII of the 2015 Agreement on each of the plaintiffs.  Prior to July 1, 2015, plaintiff Kantor had accrued 233 sick days, which equated to $18,275 under the 2012 Agreement.  Plaintiff Barila had accrued 308.5 sick days, which equated to $25,000 under the 2012 Agreement. Plaintiff Enrico had accumulated 282.5 sick days, which equated to $25,000 under the 2012 Agreement. Likewise, plaintiff Ludwig accumulated 263 sick days, which equated to $25,000 under the 2012 Agreement. Since this litigation commenced, plaintiffs Kantor and Barila have retired and were paid for their unused, accumulated sick leave pursuant to the formula set forth in Article VIII of the 2015 Agreement.  The Board has taken the position that when plaintiffs Enrico and Ludwig retire, they too will be compensated for their unused, accumulated sick leave pursuant to the formula set forth in Article VIII of the 2015 Agreement.

On June 9, 2016, plaintiffs filed a complaint challenging the retroactive divestiture of their accumulated but unpaid sick leave. On July 26, 2016, defendant filed a motion to dismiss in lieu of an answer. Plaintiffs then filed a cross-motion to file a supplemental pleading on September 8, 2016. By order dated September 19, 2016, the trial judge denied the motion to dismiss and granted the motion to amend the pleading.

Plaintiffs filed a motion for summary judgment on March 21, 2017. The Board filed a cross-motion for summary judgment seeking to dismiss Count I of plaintiffs' amended complaint alleging breach of contract. The Board alleged that the trial court had no jurisdiction to decide the case as N.J.S.A. 34:13A-5.4(d) of the New Jersey Employer-Employee Relations Act confers exclusive jurisdiction on the Public Employment Relations Commission (PERC) to decide scope of negotiations issues. In addition, the Board argued that it had the right to negotiate away plaintiffs' right to accumulated sick leave, even if those rights had vested.

In an extremely detailed and thorough thirty-nine page opinion, Judge Robert P. Contillo rejected defendant's argument that plaintiffs' claims involved a scope of negotiation issue. As a result, the judge found that he had jurisdiction to hear and decide the merits of the case. On the merits, the judge

concluded that compensation for accumulated but unpaid sick leave was a form of deferred compensation that, once earned, could not be divested retroactively through negotiated collective bargaining agreements.

On appeal, defendant challenges the trial court's decision that plaintiffs' claims did not implicate a scope of negotiations issue. Defendant also contends that Count I, although phrased as a violation of contractually vested rights, is actually a challenge to the ability of the Board and the Association to negotiate changes to the accumulated sick leave provisions. We affirm substantially for the reasons articulated in the judge's opinion, adding the following comments.

In reviewing orders for summary judgment, an appellate court uses the same standard as the trial court. Globe Motor Co. v. Iqdalev, 225 N.J. 469, 479 (2016); Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). We decide first whether there was any genuine issue of material fact. If there was not, we then decide whether the trial court's ruling on the law was correct. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). Because the facts in this case are stipulated, the issues on appeal are purely legal in nature. Accordingly, our review of the trial court's rulings are de novo. Estate of Hanges v.

Metro. Prop. & Cas. Ins. Co. 202 N.J. 369, 382-83 (2010); see also Manalapan Realty LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

I. Subject matter jurisdiction.

Subject matter jurisdiction is the power of the court to hear and determine "cases of the class to which the proceeding in question belongs.  It rests solely upon the court's having been granted such power by the Constitution or by valid legislation . . . ." State v. Osborn, 32 N.J. 117, 122 (1960). While state courts are generally granted "expansive authority" to resolve a wide range of disputes, Thompson v. City of Atlantic City, 190 N.J. 359, 378-79 (2007), subject matter jurisdiction is not without limits.  See, e.g. Bd. of Educ. of Plainfield v. Plainfield Educ. Ass'n, 144 N.J. Super. 521, 525 (App. Div. 1976).

Our Supreme Court has held that PERC has primary jurisdiction over scope of negotiations issues:  "[U]nder N.J.S.A. 34:13A-5.4(d) PERC is the forum for the initial determination of whether a matter in dispute is within the scope of collective negotiations.  PERC's jurisdiction in this area is primary." State v. State Supervisory Emps. Ass'n, 78 N.J. 54,

83 (1978) (citations omitted). "[W]orking hours, compensation, physical arrangement and facilities and customary fringe benefits [are considered] the essential components of terms and conditions of employment." Id. at 67 (citing Bd. of Educ. v. Englewood Teachers Ass'n., 64 N.J. 1 (1973)). When a controversy "concerns the propriety of the parties negotiating and agreeing on the item in dispute, [the trial judge] should refrain from passing on the merits of the issue," because "PERC has primary jurisdiction." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 153-54 (1978).

As the trial court correctly noted, however, the question of who may initiate such an inquiry is not entirely clear. In Loigman v. Township Committee of the Township of Middletown, 297 N.J. Super. 287, 303 (App. Div. 1997), we found that N.J.S.A. 34:13A-5.4(d) "allows only public employers and majority representatives to request scope-of-negotiations decisions." See also Petersen v. Township of Raritan, 418 N.J. Super. 125 (App. Div. 2011) (holding an individual plaintiff could sue his employer, the defendant township, alleging that the defendant's elimination of traditional health care benefits to retirees violated 1997-1999 collective negotiations agreement).

Notwithstanding this ambiguity, as the trial court found, it is clear that plaintiffs could not file an action with PERC. Tellingly, neither defendant nor the Association expressed an interest in obtaining a scope of negotiations determination from PERC. The judge noted that, "the Association has expressed no interest in initiating such a process. Nor has it sought to intervene in this case." That neither the Board nor the Association sought a determination from PERC, knowing there were dissenting employees at the time of the negotiations, undercuts their argument that the trial court was not empowered to resolve the dispute.

The trial judge also correctly rejected defendant's argument that Count I alleges a scope of negotiations issue. We observe, as did the trial judge, that plaintiffs do not dispute that the Board and the Association are empowered to negotiate changes to the accumulated sick leave provisions. See Maywood Educ. Ass'n v. Maywood Bd. Of Educ., 131 N.J. Super. 551 (Ch. Div. 1974). The question in Count I was not whether the Board and the Association could include sick pay benefits as a negotiable item in their collective bargaining, but more narrowly whether the Board and the Association could retroactively divest plaintiff of their vested right to deferred compensation in an amount that exceeds $15,000. Given the

inability of plaintiffs to pursue a PERC determination, defendant's apparent disinterest in filing a PERC claim, and the narrow issue under review, the trial court did not err in determining that it had subject matter jurisdiction to adjudicate plaintiffs' breach of contract claim.

II. The negotiability of vested sick leave time.

We have recognized that payment for accumulated sick leave, as a form of deferred compensation, is to be protected. In Matter of Morris School District Board of Education, 310 N.J. Super. 332 (App. Div. 1998), we held that although the parties collectively agreed to be bound by a fact finder's determination in advance, a retroactive cap on vested or accumulated compensation could not be upheld absent a knowing and intentional waiver by the persons adversely affected. The court in Morris was "satisfied that the Commission's policy barring divestment absent a knowing waiver was reasonable and within its statutory powers." Id. at 343. In so holding, we noted that "our Supreme Court has protected similar rights against invasion." Ibid. (citing Gauer v Essex Cty. Div. of Welfare, 108 N.J. 140, 144 (1987)). Furthermore, the Supreme Court opined in Owens v. Press Publishing Co., 20 N.J. 537 (1956) that the right to severance pay survived the expiration of a

collective bargaining agreement.  As we recognized in <u>Morris</u>

<u>School Distict</u>, <u>Owens</u> held:

> deferred compensation 'was not conditioned upon the employee's discharge from service within the term of the collective bargaining agreement.'  The Court reasoned that 'once the right came into being it . . . survive[d] the termination of the agreement.'  In contrast, the Court concluded that the plaintiffs' claims for severance pay allegedly earned in the intervening period between expiration of the collective bargaining agreement and their respective discharge was 'ill-founded.'
>
> [<u>Morris School Dist</u>., 310 N.J. Super. at 344 (quoting <u>Owens</u>, 20 N.J. at 348-49)(alterations in original)].

In the instant matter, the trial court applied similar reasoning in its opinion noting that the

> [B]oard was authorized to negotiate over the accumulated sick leave provisions prospectively, or going forward.  In contrast, a board of education is generally not permitted to divest teachers of their vested rights earned under prior collective negotiation agreements.

As did the trial judge, we agree that <u>Morris</u> and <u>Owens</u> stand for the proposition that compensation for accumulated sick leave is "earned" during the service performed by the teachers during the term of any particular collective negotiation agreement.  Once vested, the right to compensation is a form of deferred compensation that cannot retroactively be negotiated

12                          A-4234-16T4

away.  <u>Morris School Dist.</u>, 310 N.J. Super. at 347-48. In that regard, New Jersey courts have consistently protected various forms of deferred compensation from retroactive divestment through collective bargaining negotiations absent consent of the affected employees.  <u>See</u> <u>e.g.</u> <u>State Troopers Fraternal Assoc. v. State</u>, 149 N.J. 38 (1997) (retroactive pay adjustments); <u>Gauer</u>, 108 N.J. at 144 (reimbursement of health insurance and Medicare premiums); <u>Owens</u>, 20 N.J. at 442 (severance pay).

In this case, plaintiffs did not consent to the retroactive divestment of their vested rights.  Accordingly, the trial court correctly held that the Board and Association impermissibly applied the 2015 Agreement to retroactively divest plaintiffs' right to earned compensation.  There was no error in the trial court's decision to deny defendant's motion for summary judgment.

We affirm the orders on appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4234-16T4