**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2049-14T2

ALFRED J. PETIT-CLAIR, JR.,

    Plaintiff-Appellant,

v.

CITY OF PERTH AMBOY,

    Defendant-Respondent.

_____

          Argued January 8, 2018 — Decided September 7, 2018

          Before Judges Sabatino, Ostrer and Whipple.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Middlesex County, Docket
          No. L-3703-13.

          Alfred Petit-Clair, Jr., appellant, argued the
          cause pro se.

          Michael S. Williams argued the cause for
          respondent (Cruser Mitchell Novitz Sanchez
          Gaston & Zimet, LLP, attorneys; Douglas V.
          Sanchez, of counsel; Michael S. Williams, on
          the brief).

PER CURIAM

    Plaintiff Alfred Petit-Clair, Jr. complains that the City of

Perth Amboy lacked the power in 2009 to terminate retiree medical

benefits for part-time employees like himself, who were already eligible to retire but had not done so. Plaintiff appeals from the Chancery Division's order granting the City of Perth Amboy summary judgment and dismissing his complaint. Plaintiff essentially argues he obtained a contractual right to the retiree health benefits because the City's mayor had assured him in 1990, before he was hired, that he would receive them, and the City adopted a resolution in 1994 formalizing such benefits. He also argues the City was equitably estopped from denying him benefits, and barred by N.J.S.A. 40A:10-23 from treating part-time employees differently from full-time employees.

We are unpersuaded. Absent a clear and unmistakable expression of intent to create a contractual obligation, the City was free to withdraw previously granted employee benefits. Also, the City was not equitably estopped from withdrawing the benefits, as plaintiff's reliance on the mayor's assurances was unreasonable. Furthermore, the City was free to treat part-time and full-time employees differently, because they were not similarly situated. We therefore affirm.

I.

In a previous opinion, we reviewed facts regarding plaintiff's employment with the City. Petit-Clair v. Bd. of Trs., No. A-2048-16 (Mar. 1, 2018) (slip op. at 2-4) (Petit-Clair I).

We focused on his claimed entitlement to pension credits under the Public Employees' Retirement System (PERS), after over twenty-five years of service as the part-time attorney for the City's zoning board of adjustment (ZBA). Here, we highlight facts relevant to plaintiff's claimed entitlement to retiree health benefits from the City. We extend to plaintiff all favorable inferences. <u>See</u> <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 N.J. 520, 540 (1995).

Before the ZBA formally selected plaintiff as its part-time attorney in 1990, <u>see</u> N.J.S.A. 40:55D-71(b), the mayor assured plaintiff he would be eligible for health benefits when he later retired. In January 1994, the City adopted a resolution formally granting retiree health benefits to both part-time and full-time employees. After noting its authority under N.J.S.A. 40A:10-23, the resolution stated:

> NOW, THEREFORE, IT IS HEREBY RESOLVED BY THE COUNCIL OF THE CITY OF PERTH AMBOY:
>
> 1. That health and hospital benefit coverage shall, upon adoption of this resolution, be provided, at City expense, as set forth in the City's health benefits plan for retirees, to employees and their dependents who retire after 25 years' or more of service with the City of Perth Amboy and employees, and their dependents, who have retired and reached the age of 62 or older with at least 15 years of service with the City of Perth Amboy.

In the years following the 1994 resolution, the City provided for retiree health benefits in collective negotiation agreements, which did not cover plaintiff.  See Perth Amboy Ordinance No. 1464C-2009 (Adopted May 27, 2009).

In 2009, the City withdrew retiree health benefits from part-time employees who were not covered by collective negotiation agreements, but left them in place for certain full-time workers. The change was accomplished in three steps.  In January 2009, the City rescinded the 1994 resolution, thereby denying retiree health benefits to all employees not covered by such agreements.  Ibid. Four months later, the City restored retiree health benefits for employees who had worked for the City continuously since 1994, but only if they did so full-time.  The May 2009 ordinance states:

> SECTION 2.  Pursuant to N.J.S.A. 40A:10-23, the City will assume the premium cost of the controlling group health and hospital insurance coverage for employees who retire and satisfy the following conditions:
>
> A.   The employee commenced full-time employment for the City of Perth Amboy prior to July 1, 1994 and remained continuously employed full-time by the City through the date of qualifying retirement under a State of New Jersey administered retirement plan; and
>
> 1.   The employee retired:
>
> a.   On a State disability pension as a result of an on-the-job injury sustained while

A-2049-14T2

performing services for the City of Perth Amboy; or

b. After 25 years or more of employment service in the City of Perth Amboy; or

c. With at least 15 years of employment service in the City of Perth Amboy and reached the age of 62 years or older.

B. The level of insurance will be the prevailing group coverage that is in effect for the non-unionized employees of the City and the qualifying retiree will be subject to and responsible for any employee contributions and/or co-pays in effect from throughout retirement.

[Ibid.]

Five months later, the City amended the ordinance in its entirety, to expand the class of eligible full-time employees by covering full-time employees who started working for the City before January 1, 2008, instead of July 1, 1994. See Perth Amboy Ordinance No. 1484-2009 (Adopted Oct. 14, 2009), codified at Perth Amboy Municipal Code, art. V, § 85-8 to 85-9 (2018). Part-time employees remained ineligible.[1]

When the City adopted the May 2009 ordinance, plaintiff was already eligible to retire. He was sixty-five years of age, and had worked eighteen years for the ZBA. At that time, however,

---

[1] We take judicial notice of the October 2009 ordinance, which is not a part of the record. See N.J.R.E. 201(a); N.J.R.E. 202(b).

plaintiff was unaware of the ordinance's consideration and passage. The City conceded at oral argument that plaintiff would have received retiree health benefits had he retired before they were rescinded. He became aware of the change in policy in 2011, when he submitted retirement papers, and was informed he would need to procure his own insurance. In order to retain insurance for himself and his adult disabled son, plaintiff withdrew his retirement application and continued working as the ZBA attorney.[2]

The City contends that it restricted retiree health benefits in 2009, and adopted other cost-cutting measures, to address a structural budget deficit. Among other austerity measures, the City raised taxes twenty-six percent; increased water and sewer rates by seventy percent for industrial users and forty-six percent for residential users; laid off about one hundred employees and reduced payroll through attrition; and increased deductibles and copayments under the health insurance plan.[3]

As noted in Petit-Clair I, slip op. at 3, plaintiff received assurances from a different mayor in 2011. The mayor told

_____

[2] At oral argument, plaintiff stated he was still the attorney for the ZBA, but was uncertain about the future.

[3] The City contends it was on the brink of bankruptcy. Plaintiff responds that the City never hired bankruptcy counsel, let alone filed a bankruptcy petition.

plaintiff that his problem with retiree health benefits would be worked out. But, it was not.

## II.

Plaintiff initially filed his verified complaint against the City on September 24, 2012. He withdrew that complaint with the City's consent pending his pension appeal, and then filed a complaint in lieu of prerogative writs on June 5, 2013. He alleged the May 2009 ordinance was "ultra vires as an 'irregular exercise of basic power'"; the City was equitably estopped from depriving him of retiree health benefits; and the City's actions were arbitrary and capricious. After a period of discovery, the parties filed cross-motions for summary judgment.

During oral argument, the City asserted plaintiff's action was time-barred by Rule 4:69-6. Substantively, the City contended the 2009 ordinance was not ultra vires, and it was empowered to distinguish between full-time and part-time employees, and benefit only the former. The City also argued plaintiff unreasonably relied on the mayor's promise in 1990 that he would receive retiree health benefits.

Plaintiff argued that the City was barred from withdrawing the benefits because he relied for many years on the prospect of receiving them, and they were a form of earned compensation, not a gratuity. He contended the City was equitably estopped from

withdrawing the benefits, because he reasonably relied, to his detriment, on the promises of payment. Plaintiff also argued the City's distinction between classes of employees violated the uniformity requirement in N.J.S.A. 40A:10-23(a).[4]

The trial court granted the City summary judgment on both procedural and substantive grounds. In a written decision, Judge Frank M. Ciuffani found plaintiff's action was time-barred by Rule 4:69-6. Plaintiff filed it roughly two years after he discovered in 2011 that he was ineligible for retiree health benefits, in violation of the Rule, which generally imposes a forty-five day time-bar.

Substantively, the court rejected plaintiff's argument that the City's actions were an irregular exercise of its delegated powers. The plain language of N.J.S.A. 40A:10-23 grants municipalities broad discretion in providing retiree health benefits. The court relied on Fair Lawn Retired Policemen v. Borough of Fair Lawn, 299 N.J. Super. 600, 606 (App. Div. 1997), in which we recognized that a municipality in its discretion could elect to assume only a portion of the cost of retirement health

---

[4] The statute states that a public employer may provide retirement insurance benefits to employees "who have retired and reached the age of 62 years or older with at least 15 years of service with the employer . . . under uniform conditions as the governing body of the local unit shall prescribe." N.J.S.A. 40A:10-23.

coverage. Judge Ciuffani reasoned, just as "a municipality may elect to share in the costs of providing retirement health benefits rather than take an all or nothing approach, a municipality might naturally also decide to limit the provision of such benefits to full time employees."

The court then rejected plaintiff's argument that the City should be equitably estopped from denying plaintiff retirement health benefits. The court found that plaintiff unreasonably relied on the mayor's 1990 promise, as the mayor lacked the authority to make it, and it presumed plaintiff would be reappointed ZBA attorney each year for at least fifteen years. The court also found plaintiff failed to demonstrate that he detrimentally changed his position based on the promise, because he continued to maintain his law practice while he served as ZBA attorney and only declined a small number of cases due to a conflict of interest.

The court also held that N.J.S.A. 40A:10-23's "uniform conditions" requirement did not prevent the City from rescinding retirement health benefits from part-time employees. Citing <u>Fair Lawn</u>, and <u>Gauer v. Essex County Division of Welfare</u>, 108 N.J. 140 (1987), the court found the City exercised its discretion to grant retiree health benefits only to full-time employees, and the "uniform conditions" proviso did not "require strict uniformity

across all classes . . . . Instead, [the] requirement is satisfied so long as employers have a meritorious basis to distinguish a certain class of employees from another." Thus, the court granted the City's motion for summary judgment and denied plaintiff's.

Plaintiff then filed a motion for reconsideration, seeking Judge Ciuffani's recusal. The judge denied the motion orally.

This appeal followed.[5] Plaintiff renews and refines the arguments presented to the trial court. He also contends the trial court erred in not relaxing the deadline for filing the action in lieu of prerogative writs, and denying his recusal motion.[6]

## III.

On appeal from an order granting summary judgment, we exercise de novo review, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). As we discern no genuine issue of material fact, our task is to determine whether the motion judge correctly applied the law. Ibid. We discern no error.

---

[5] The case was initially argued in September 2015, and then adjourned so it could be reargued, back-to-back with the pension appeal.

[6] The parties also filed supplemental briefs on whether the PERS Board's decision on plaintiff's eligibility for pension service credit should have collateral estoppel effect in this case. We need not reach that issue given our disposition on other grounds.

A-2049-14T2

Plaintiff challenges the May 2009 ordinance on three principal grounds: it violates the uniformity requirement of N.J.S.A. 40A:10-23; it withholds what he contends is a "vested" right to a form of compensation; and principles of equitable estoppel should bar application of the ordinance to him. His challenge must be viewed against a presumption that local ordinances are valid and an appropriate exercise of local governmental power. See Bell v. Stafford, 110 N.J. 384, 394 (1988). Plaintiff bears a heavy burden to establish invalidity. Ibid.

A.

The City's disparate treatment of part-time employees does not violate N.J.S.A. 40A:10-23, which authorizes local governments to pay the cost of retiree health benefits "under uniform conditions." The provision states:

> The employer may, in its discretion, assume the entire cost or a portion of the cost of such coverage and pay all or a portion of the premiums for [eligible] employees . . . including the premiums on their dependents, if any, under uniform conditions as the governing body of the local unit shall prescribe.
>
> [N.J.S.A. 40A:10-23 (emphasis added).]

Eligible employees include, among others, employees "who have retired and reached the age of 62 years or older with at least 15 years of service with the employer." N.J.S.A. 40A:10-23(a)(d).[7]

The uniformity requirement has been interpreted to permit disparate treatment of discrete classes of employees. In Gauer, Essex County misread the statute to require it to rescind benefits granted to former employees of the County Welfare Board, who were absorbed into the County Division of Welfare when the County recognized its form of government in 1979. 108 N.J. at 144. In 1974, the Board adopted a resolution granting retiree health benefits to employees with twenty-five years of service. Id. at 143. After reorganization, the County continued paying those benefits to (1) Board retirees who had been receiving them, as well as (2) former Board employees who became Division employees, if they retired with twenty-five years or more service in a state or local pension system in accordance with the Board's resolution. Id. at 144. Plaintiff was in the latter group, having retired in 1981. Ibid. However, effective January 1, 1985, in the name of "uniform" treatment under N.J.S.A. 43:10A-23, the County stopped

_____

[7] There is no dispute that he satisfied N.J.S.A. 40A:10-23(a)(d). Also eligible are employees who, among other things, must have "25 years or more of service credit in a State or locally administered retirement system," N.J.S.A. 40A:10-23(a)(b) and -23(a)(c). However, plaintiff's service credit in PERS remains at issue. See Petit-Clair I.

payments to former Board employees in both categories, so all County welfare workers were treated equally. Ibid.

The Supreme Court held that the County was mistaken. The Court defined the question to be "whether any group of county employees is uniquely or specially situated so that particularized treatment may be accorded such employees without violating the uniformity standard." Id. at 147. The County mistakenly focused on the fact the same entity employed former Board workers, as well as workers who began service with the Division. Id. at 147-48. "The issue is not whether the employer is the same, albeit a successor in form, but whether successive employees are similarly situated." Ibid.

The Court held that the former Board employees who were already retired and receiving benefits were in a distinct class who could receive disparate treatment. Referring to employees like Gauer, who already retired after working for both agencies and had been receiving the benefit, the Court said, "Employees who worked for the former Board as well as the successor Division were hired and/or served out their employment and retired under a particular compensation scheme governing employment." Id. at 148. They were entitled to be treated differently from new Division hires, or Board employees who stayed after the new system denying retiree health benefits was put in place. Ibid. "They stand on

13

a distinctively different footing from any employees who were thereafter hired or continued to be employed up to the point of retirement under a different compensation/benefit scheme." Ibid. To emphasize that the Court was addressing former Board employees who had already retired when the 1985 policy was implemented, the Court stated, "The retired former employees thus constitute a distinct group and will represent, in the future, an ever-diminishing class." Ibid. (emphasis added).[8]

Fair Lawn addressed a December 1988 ordinance that, in conformity with applicable collective negotiation agreements, separately treated four categories of retirees: (1) full-time employees who retired before December 31, 1987; (2) full-time employees who had not retired by December 31, 1987; (3) full-time employees hired between January 1 and April 25, 1988; and (4) employees, whether full-time, part-time, or temporary, hired after April 26, 1988. 299 N.J. Super. at 603. The Borough paid for half the cost of health benefits for retirees in the first category. Ibid. A 1975 ordinance that preceded enactment of N.J.S.A. 40A:10-23 provided for such a benefit to any retiree with twenty years of service. Id. at 602. The 1988 ordinance paid all

---

[8] If the group also included not-yet-retired former Board employees, it is conceivable the class would not be "ever-diminishing," but might temporarily grow.

the cost for benefits for persons in the second and third category; and none for those in the fourth category. Id. at 603.

The plaintiff, a group of retirees in the first category, complained that the 1988 ordinance violated the uniformity requirement of N.J.S.A. 40A:10-23 — apparently because they continued to pay for half of the cost of their benefits, while others paid nothing. See ibid. The trial court agreed that everyone had to be treated the same, but ordered that "all retirees are limited to the payment of 50% of their health care premiums . . . ." Id. at 604. Also, all retirees receiving the benefit had to have twenty-five years of service, consistent with N.J.S.A. 40A:10-23, rather than twenty years as the 1988 ordinance required. Ibid.

Relying on Gauer, we held that the municipality was empowered to treat the already-retired employees separately. Id. at 605-06. "As regards employees who worked and retired under different compensation/benefit conditions, the ordinance continues to give effect to the scheme in effect at their retirement." Ibid. They formed a distinct group who could receive disparate treatment. Ibid. "Those retired former employees 'stand on a distinctively different footing from any employees who were thereafter hired or continued to be employed up to the point of retirement under a different compensation/benefits scheme.'" Id. at 606 (quoting

Gauer, 108 N.J. at 148). Also, nothing in the statute, as it then existed, barred the municipality from paying only a portion of the retirees' benefits. Id. at 606.[9] We found "no logical reason to hold that the legislature intended to restrict municipalities to an all or nothing election" to provide benefits to eligible employees. Ibid.

Applying Gauer and Fair Lawn, we conclude the uniformity requirement of N.J.S.A. 40A:10-23 did not prohibit the City from providing, in its May 2009 ordinance (and its October 2009 ordinance), retiree health benefits to certain full-time employees, but not part-time employees. The City was not bound to cover all employees, or none of them. Part-time workers form a "specially situated" class of employees "so that particularized treatment may be accorded such employees without violating the uniformity standard." Gauer, 108 N.J. at 147.

### B.

Even if the uniformity requirement did not require the City to provide plaintiff retiree health benefits, he contends "benefits cannot be rescinded, once they were authorized in the first place." He argues the City lacked the authority to withdraw

_____

[9] Eventually, the Legislature amended N.J.S.A. 40A:10-23 to provide that a municipality may pay "a portion of the cost" of coverage. L. 2010, c. 2, § 15.

those benefits once promised — by the mayor and the 1994 resolution — because they were a form of compensation; his right to receive them "vested" when he became eligible; and the City was barred from withdrawing them, notwithstanding that plaintiff had not retired before they were withdrawn.

Plaintiff misplaces reliance on Gauer, Fair Lawn, and a third decision, Bonzella v. Monroe Township, 367 N.J. Super. 581 (App. Div. 2004). Furthermore, plaintiff's position is at odds with Berg v. Christie, 225 N.J. 245 (2016), in which the Supreme Court upheld the Legislature's power to suspend future pension cost of living increases (COLA) absent "unmistakable" or "unequivocal intent to create a non-forfeitable right to yet unreceived COLAs . . . ." Id. at 253. If the Legislature can deny future COLAs, despite their prior authorization, then the City can deny yet unreceived retiree health benefits to part-time employees like plaintiff.

We turn first to the pre-Berg cases of Gauer, Fair Lawn, and Bonzella. As discussed, Gauer addressed Essex County's decision to cease paying retiree health benefits to persons who had worked for the former Welfare Board and retired as Board employees, or continued working for the Division after reorganization and thereafter retired. Concluding that N.J.S.A. 40A:10-23 did not compel that action, the Court also addressed "whether the County

may nonetheless unilaterally terminate such benefits."  108 N.J. 148.  The Court answered in the negative.

In reaching that conclusion, the Court "consider[ed] the nature of the benefit; is it, in other words, a mere gratuity, or are there sufficient policy reasons to require continuation of payment in the absence of proof of a loss of fiscal integrity in the plan?"  Ibid.  The Court declined to characterize the benefits simply as "compensation," but referred to their "compensatory nature," and the "compensatory aspect of their nature. . . ."  Id. at 149-50.  As the benefits were "intended at least in part as compensation," the Court was "satisfied that, like pensions, these retirement benefits were sufficiently compensatory to afford the plaintiff some interest in their preservation."  Id. at 150.[10]

---

[10] The Court cited three cases, but none held retiree benefits were non-modifiable, earned compensation.  See Gauer, 108 N.J. at 149 (citing Uricoli v. Bd. of Trs., Police and Firemen's Retirement Sys., 91 N.J. 62 (1982); Masse v. Bd. of Trs., Pub. Emps. Retirement Sys., 87 N.J. 252 (1981); and Geller v. Dep't of the Treasury, 53 N.J. 591 (1969)).  The Uricoli Court noted that pensions "are contractual in nature and constitute deferred compensation for services rendered," but stopped short of adopting other jurisdictions' view that "pensions [are] a vested contractual right," 91 N.J. at 71.  The Court noted that it eschewed such a bright-line rule in Spina v. Consolidated Police and Firemen's Pension Fund Commission, 41 N.J. 391 (1964).  Instead, the Uricoli Court held that the pension's compensatory nature should be a factor in considering whether Uricoli's misconduct should be grounds for loss of pension.  91 N.J. at 77-78.

However, the Court's holding was limited to honoring benefits that former Board employees, like Gauer, had already begun receiving when the County withdrew them. The Court held the County was obliged to honor the prior policy "with respect to employees who were hired by the Board and/or served out their employment and retired under the resolution's provision . . . ." Ibid. (emphasis added).[11]

---

In Masse, the Court referred to the compensatory nature of pension benefits, but only in interpreting whether the Legislature would have stripped pension credits from an employee who committed a crime unrelated to employment without expressly requiring it. 87 N.J. at 260-63. The Court endorsed the view that the right to a pension was "not contractual in nature." Id. at 260 (quoting Salz v. State House Comm'n, 18 N.J. 106, 111 (1955)).

The Geller Court stated that pension benefits "are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service," 53 N.J. at 597, but simply to support the liberal construction of the statute, and the conclusion that a teacher was entitled to buy back pension credits at a prior offering price, where the pension system erroneously failed to make required deductions. Id. at 598.

[11] The use of "and/or" followed by "and" injects an element of ambiguity. We interpret the sentence to refer to three classes of persons: (1) those who were hired by the Board, served out their employment with the Division, and retired — all under the resolution; (2) those who were not hired by the Board under the resolution, presumably because they started working for the Board before the resolution's adoption, but served out their employment and retired under the resolution; and (3) those who were hired by the Board and retired, both under the resolution, without serving under the Division. This is consistent with the statement, "Employees who worked for the former Board as well as the successor Division were hired and/or served out their employment and retired under a particular compensation scheme governing their

Furthermore, Gauer recognizes that retiree benefits are not, without qualification, compensation; for if that were so, rescission after an employee qualified for the benefit would be a breach of contract. See ibid. As the Gauer Court noted, pension benefits may be reduced "unilaterally when the underlying motivation is . . . preservation of the integrity of the benefit system . . . ." 108 N.J. at 150. Here, the City changed the rules in 2009 because it claimed it could no longer afford the cost of providing retiree health benefits as broadly as it had previously. Although plaintiff emphasizes that the City did not file for bankruptcy or even retain bankruptcy counsel, the City's budgetary predicament was evidently serious, given the other austerity measures the City adopted. In short, the integrity of the City's finances was at stake.

Fair Lawn, which followed Gauer, also only addressed the rights of persons who had already retired and were receiving an awarded benefit when the municipality adopted its ordinance. 299 N.J. Super. at 602. For those members who retired under the 1975 ordinance with twenty years of service, before N.J.S.A. 40A:10-23 was enacted, which required twenty-five years of service, we stated

_____

employment." Id. at 148. Those employees were distinguished from "employees who were thereafter hired <u>or continued to be employed up to the point of retirement</u> under a different compensation/benefit scheme." Ibid. (emphasis added).

that "Gauer protects them from retroactive modification" of their retiree health benefits. Id. at 606. However, those members who retired with less than twenty-five years, subsequent to enactment of N.J.S.A. 40A:10-23, should be treated differently, unless they had reached the age of sixty-two with fifteen years as service with their employer. Ibid. We held, "As to non-disabled retirees with less than twenty-five years of service who retired subsequent to enactment of N.J.S.A. 40A:10-23, the provision of a fifty percent payment is ultra vires and in derogation of the statute, unless they had reached the age of sixty-two with fifteen years of service with the employer at retirement." Ibid. Thus, the Legislature was empowered to change the rules — by enlarging the requisite years of service — for those not yet retired, regardless of whether they would have qualified for the benefit had they retired with over twenty years' service before the enactment.

In short, Fair Lawn does not support the proposition that the City was barred from restricting eligibility for the benefit plan once it was put in place. Rather, Fair Lawn confirmed the Legislature's power to tighten eligibility requirements for a benefit that had already been "promised" by a prior ordinance. Furthermore, Fair Lawn addressed only the claim of parties who had already retired before the municipal action, unlike plaintiff

21

here, who remained on the job after the municipality rescinded the benefit.

Nor are we persuaded that <u>Bonzella</u> compels a result favorable to plaintiff. We held that Theresa and Thomas Bonzella, married municipal employees, "had a contractual right to the [retiree health] benefits provided by" a municipal resolution. 367 N.J. Super. at 588. In 1982, Monroe Township passed a resolution stating, "We hereby agree to pay the premium" for retiree health benefits for persons with twenty-five or more years of service, under the State Health Benefits Program (SHBP), in which the township participated. In 1993, after opting out of SHBP, the township adopted a second resolution stating it "shall provide . . . insurance coverage for all employees retired after 25 years or more of service . . . ." When the Bonzellas sought to retire, taking their own coverage, naming their spouse as a dependent, the township refused, invoking an administrative policy that barred double-coverage. We relied on <u>Gauer</u> in holding that the coverage was part of the plaintiffs' compensation. <u>Id.</u> at 588.

We acknowledge that the panel in <u>Bonzella</u> rejected the township's argument that "<u>Gauer</u> is distinguishable because [the Bonzellas] have not yet received any spousal medical benefits." <u>Id.</u> at 589. Quoting another use of "and/or" in <u>Gauer</u>, the panel held that the "<u>Gauer</u> Court did not distinguish between those who

22

had already retired and those who continued to work under the original compensation package. It held that benefits could not be rescinded for those 'who had been hired — and/or retired — by the predecessor agency under different employment conditions.'" Ibid. (quoting Gauer, 108 N.J. at 147).

The quoted sentence from Gauer refers to three groups: persons whom the Board hired under its benefit plan — that is, hired on or after December 3, 1974; persons who were so hired and retired by the Board; and persons who were hired by the Board, but not under the plan — in other words, persons hired before December 3, 1974 — who nonetheless retired by the Board under its benefit plan. The first group conceivably could include persons who had not yet retired at all. But, Gauer goes on to clarify that it was referring only to those who were not "retired . . . by the predecessor agency[,]" but were retired by the Division, after the 1979 reorganization and before the 1984 policy change. 108 N.J. at 147-48. Gauer fell into that category. As we have previously noted, the Court specifically stated that Gauer stood on a "different footing from any employees who were thereafter hired or continued to be employed up to the point of retirement under a different compensation/benefit scheme." Id. at 148 (emphasis added).

23

In any event, a strong argument could be made that the township in <u>Bonzella</u> explicitly bound itself contractually, unlike the City, to pay benefits to the married plaintiffs based on the express language of the 1982 ordinance. It stated that the township "hereby agree[d]" to pay the benefits. 367 N.J. Super. at 584. Such a clear undertaking may have shielded the Bonzellas from a subsequent change, unlike the 1994 resolution in plaintiff's case, which merely "authoriz[ed]" the City's "wish[] to provide" the benefits at issue.

C.

Plaintiff's contention that he had an unalterable contractual right to retiree health benefits also is at odds with the principle, recently confirmed in <u>Berg</u>, that the legislative creation of a contractual right must be unequivocal or unmistakable. <u>See</u> 225 N.J. at 253. Absent such a clear expression of intent, the Legislature, and impliedly a municipal governing body, retain the power to adjust benefits previously granted. <u>See</u> <u>ibid.</u>

In <u>Berg</u>, the Supreme Court held that pension benefits COLAs were not contractual obligations of the State because the Legislature did not make them unmistakably so. <u>See</u> <u>id.</u> at 272-73. Consequently, the Legislature was free to eliminate new COLAs for current retirees — even those who retired in reliance on them

being there. See id. at 278. The Berg Court adopted the standard that the Legislature's contractual undertaking must be "unmistakable." Id. at 263-64. The Court also held that a claim of a contractual undertaking must be subject to rigorous review because of the "harsh" ramifications: "To find a contract created by statute means that the Legislature binds itself to a policy choice and surrenders the power of future elected representatives to cut back on that choice." Id. at 260.

Berg dealt with the meaning of the non-forfeitable-right statute — which made at least base pension benefits a contractual right. See N.J.S.A. 43:3C-9.5. However, the statute expressly excluded medical benefits: "For purposes of this section, a 'non-forfeitable right to receive benefits' means that the benefits program, for any employee for whom the right has attached, cannot be reduced. The provisions of this section shall not apply to post-retirement medical benefits which are provided pursuant to law." N.J.S.A. 43:3C-9.5(a). As medical benefits are not a non-forfeitable right, they are subject to forfeiture by Legislative action.

The Berg Court hearkened to Spina, which upheld a legislative revision of a pension formula, lengthening the service period required for benefits, see 41 N.J. at 393. The Court noted that the Legislature was "free to rewrite the formula" for the pensions,

Berg, 225 N.J. at 261 (quoting Spina, 41 N.J. at 402), absent a clear contractual undertaking that "cut[] off the legislative prerogative to revisit its policy choices," ibid. "Writing for the Court, Chief Justice Weintraub explained that a contractual restriction on future legislative action 'should be so plainly expressed that one cannot doubt the individual legislator understood and intended it.'" Ibid. (quoting Spina, 41 N.J. at 405).

We add that the Spina Court eschewed characterizing an employee's pension right as a "'gratuity,' 'compensation,' 'contract,' [or] 'vested rights.'" 41 N.J. at 401. "None fits precisely and it would be a mistake to choose one and be driven by that choice to some inevitable consequence." Ibid. The Court cited approvingly the statement in Dodge v. Board of Education, 302 U.S. 74, 78 (1937) that there is a presumption that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." Spina, 41 N.J. at 400. The Court noted that our cases have long held that the "Legislature may revise pension plans which governmental employees are required to join." Id. at 398. The Berg Court rejected an argument, much like plaintiff's here, that once the Legislature adopted a COLA statute, it could not be suspended. See 225 N.J. at 276.

In sum, we reject plaintiff's contention that the City created a vested contractual right to retiree health benefits, which the City could not rescind. The City did not unequivocally or unmistakably intend to create such a right. Therefore, it retained the authority to withdraw plaintiff's retiree health benefits before he began receiving them.

D.

Plaintiff's remaining arguments require only brief comment. Just as the Berg Court rejected the plaintiffs' equitable estoppel argument, see id. at 279, we are constrained to reject plaintiff's argument here. The Court held a plaintiff must show that the party to be estopped "'engaged in conduct, either intentionally or under circumstances that induced reliance,'" by engaging in a "'knowing and intentional misrepresentation' . . . ." Ibid. (first quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003), then quoting O'Malley v. Dep't of Energy, 109 N.J. 309, 317 (1987)). The party to be estopped in this case is not the mayor in 1990, but the City. The mayor had no authority to bind the City to pay plaintiff retiree health benefits many years in the future. The City's passage of the 1994 resolution did not unambiguously guarantee the retiree health benefits into the future. The City did not engage in knowing and intentional misrepresentation.

Furthermore, as the trial court found, plaintiff's reliance was not reasonable. Plaintiff could not reasonably expect that the provision of retiree health benefits to part-time employees would remain forever unchanged, absent an unequivocal and unmistakable expression that it would. See ibid. ("The retirees could not reasonably expect perpetual COLAs when the non-forfeitable-right statute specifically notes that any benefit not guaranteed by the statute, a category that we hold includes COLAs, is subject to change by the Legislature.").

We need not reach plaintiff's argument that the trial court erred in enforcing the forty-five day deadline under Rule 4:69-6(a) for filing in lieu of prerogative writ actions. We have addressed the merits of his claims, presuming for the sake of argument, "it is manifest that the interest of justice so requires" expansion of the time for filing. See R. 4:69-6(c). Also, plaintiff's argument the trial judge should have recused himself from this matter lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We close by acknowledging the harsh result that plaintiff must bear. He served as the part-time ZBA attorney for over twenty-five years, anticipating health benefits upon retirement. Had he retired before the City rescinded the 1994 resolution, the City would have provided that benefit. Nonetheless, the City

retained the power to withdraw those benefits for employees who had not yet retired, including employees like plaintiff who already qualified for them.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION