**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1530-18T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

DAVID ORTMANN,

      Defendant-Appellant.

_____

Argued March 16, 2020 – Decided April 8, 2020

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1208-18.

Charles Joseph Sciarra argued the cause for appellant (Sciarra & Catrambone, LLC, attorneys; Frank Carmen Cioffi, of counsel and on the briefs).

Lauren Bonfiglio, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lauren Bonfiglio, of counsel and on the brief).

PER CURIAM

Defendant David Ortmann appeals from that portion of a Law Division order compelling the forfeiture of his entire pension earned while employed as a Jersey City police officer for over twenty-seven years. The court based its forfeiture decision on the fact that Ortmann pled guilty to a federal information in the United States District Court for the District of New Jersey to conspiracy to defraud the United States of America, in violation of 18 U.S.C. § 371, for accepting over $12,000 in payments from Jersey City for work he admitted he did not perform. Ortmann raises the following related constitutional points on appeal:

> POINT I
>
> THE COURT ERRED IN DECIDING THIS MATTER AS THE BOARD OF TRUSTEES FOR THE POLICEMEN AND FIR[E]MEN RETIREMENT SYSTEM HAS EXCLUSIVE AUTHORITY OVER OPERATION OF THE PENSION FUND.
>
> POINT II
>
> ASSUMING ARGUENDO THAT THE COURT HAD PROPER JURISDICTION OVER THIS MATTER, THE COURT ERRED IN DENYING APPELLANT AN[] EVIDENTIARY HEARING AS N.J.S.A. 43:1-3.1 IS UNCONSTITUTIONAL AS APPELLANT HAS BEEN DENIED HIS STATE CONSTITUTIONAL DUE PROCESS RIGHTS.

A-1530-18T2

    A.      N.J.S.A. 43:1-3.1 DEPRIVES APPELLANT OF HIS PROCEDURAL DUE PROCESS RIGHTS.

    B.      APPELLANT'S SUBSTANTIVE DUE PROCESS RIGHTS HAVE ALSO BEEN VIOLATED AS APPELLANT IS BEING DEPRIVED OF A PROPERTY INTEREST IN THE FORM OF HIS VESTED RETIR[E]MENT PENSION BENEFITS WITH THE STATE'S PENSION FUND.

POINT III

ASSUMING ARGUENDO THAT THE COURT DOES NOT FIND THAT N.J.S.A. 43:1-3.1 […] VIOLATE[D] OFFICER ORTMANN'S DUE PROCESS RIGHT[S], IF THE COURT APPLIED THE BALANCING TEST AND FACTORS APPLIED IN URICOLI,[1] THE COURT WOULD NOT HAVE ORDERED A COMPLETE FORFEITURE OF APPELLANT'S PENSION.

We disagree with all of Ortmann's arguments and affirm substantially for the reasons detailed in Judge Mary C. Jacobson's thoughtful and comprehensive September 25, 2018 oral decision. We provide the following comments to amplify that decision and to provide context for our opinion.

---

[1] Uricoli v. Bd. of Trs., 91 N.J. 62 (1982)

3

I.

Ortmann joined the Jersey City Police Department ("JCPD") as a patrolman following his graduation from the Jersey City Police Academy in 1989. Ortmann served with the JCPD for over twenty-seven years in various capacities. In 2007, Ortmann began working as the district clerk for the West District of Jersey City, a position he retained until his retirement in 2016. In addition to his district clerk duties, Ortmann also briefly served as off-duty coordinator, scheduling and dispatching the district's police officers for various off-duty jobs.

On December 20, 2016, Ortmann filed a retirement application with the Division of Pensions and Benefits seeking an effective retirement date of January 1, 2017. The application was subsequently approved by the Trustees of the Police and Firemen's Retirement System ("Board") and Ortmann began receiving his pension benefits on February 1, 2017.

As noted, on May 12, 2017, Ortmann pled guilty to a violation of 18 U.S.C. § 371. In the federal information detailing the allegations against him, the United States Attorney for the District of New Jersey asserted that between July 2015 and May 2016, Ortmann was involved in a conspiracy to receive payments from Jersey City for off-duty work that he did not perform by

A-1530-18T2

making false representations about his off-duty assignments. Through this conspiracy, Ortmann accepted over $12,000 in unearned payments. Ortmann was sentenced consistent with his plea bargain to a three-year probationary term, fined $2000, and ordered to pay restitution in the amount of $17,620. Ortmann also entered a consent judgment and order of forfeiture of the $12,617 in improper payments he received.

The State then filed a verified complaint and order to show cause seeking, among other relief, Ortmann's permanent disqualification from any public position. The complaint also alleged that Ortmann's federal conviction constituted a crime substantially similar to the crimes enumerated under N.J.S.A. 43:1-3.1(b) which required the complete forfeiture of all benefits earned as a member of the public pension fund in which he participated at the time of the commission of the offense.[2]

Judge Jacobson granted the State's application to proceed summarily and after hearing oral arguments, issued an oral decision and order granting the State's summary judgment application. In her oral opinion, the judge rejected

---

[2] The State also filed a verified complaint against Ortmann's co-conspirator, also seeking forfeiture of public office, permanent disqualification from any other public position, and forfeiture of pension benefits. The court granted the State's application in that related matter and entered a conforming order on June 27, 2019.

all of Ortmann's jurisdictional and constitutional arguments and specifically concluded that the Legislature's enactment of N.J.S.A. 43:1-3.1 did not violate the separation of powers doctrine and the complete forfeiture of Ortmann's pension did not violate his substantive or procedural due process rights.[3]

Specifically, the court reasoned that there was no "separation of powers problem with the [L]egislature directing the court to . . . grant an order of total forfeiture if the statutory requirements are met." The court noted that, in amending the statute in 2007 to include mandatory forfeiture, the Legislature "recognized that the pension board had administrative responsibilities for administering the pension, but . . . directed that the . . . application for the total forfeiture be done by . . . a state court judge." The court determined that because "the [L]egislature had the authority to delegate in the first instance," it was "not up to the court to quarrel with the legislative decision to make the delegation."

Further, the court concluded that because "the [L]egislature intended a total forfeiture when an individual commits [a] crime that is listed in [N.J.S.A.

---

[3] Ortmann also alleged that the pension forfeiture violated his equal protection rights. He has not, however, raised that claim on appeal, and it is therefore waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-1530-18T2

43:1-3.1]" and Ortmann's crime "touched upon his employment as a Jersey City police officer," Ortmann's due process rights were satisfied without an evidentiary hearing. In this regard, the court noted that "there [was] no basis for any trial[-]type hearing because there [were] no facts in dispute" regarding whether Ortmann's crime violated N.J.S.A. 43:1-3.1.

With respect to Ortmann's equal protection claim, the court determined that although "some arguably similar cases . . . fall between the cracks," no suspect class existed. The court noted that "[t]he statute itself vests the [A]ttorney [G]eneral with the authority to seek total pension forfeiture . . . when [that forfeiture] is based on a conviction of the laws of the United States," like Ortmann's in this case. It further stated that "[t]he [L]egislature had the right to determine the criteria on which pension forfeiture would be based," and in enacting N.J.S.A. 43:1-3.1, it used its discretion to proscribe the type of conduct in which Ortmann engaged and to require a total pension forfeiture.

After the court denied Ortmann's stay application, this appeal followed.

II.

We reject Ortmann's claim that the trial court did not have jurisdiction to decide the forfeiture issues raised by the State's verified complaint as contrary

A-1530-18T2

to the express provisions of N.J.S.A. 43:1-3.1.  That statute provides that any person who holds or formerly held "any public office, position, or employment" in the State government, or an agency or division thereof, and is convicted of one of the enumerated crimes "shall forfeit all of the pension or retirement benefit" in which he participated at the time the offense was committed and which covered the position involved in that offense.  N.J.S.A. 43:1-3.1(a); see also State v. Steele, 410 N.J. Super. 129, 134-35 (App. Div. 2011).  Among the enumerated offenses are various crimes involving official misconduct.  N.J.S.A. 43:1-3.1(b).  Further, a court must order a total pension forfeiture if an individual, like Ortmann, is convicted of a "substantially similar offense[s] under the laws of another state or the United States."  N.J.S.A. 43:1-3.1(a).  In this regard, N.J.S.A. 43:1-3.1(c) provides that "[a] court of this State shall enter an order of pension forfeiture pursuant to this section" upon a finding of guilt by the trier of fact, entrance of a guilty plea, or application by the State when forfeiture is based on a conviction under the laws of another jurisdiction.

Ortmann argues that, pursuant to N.J.S.A. 43:16A-13(a)(1), the Board has exclusive authority over the operation of the pension fund, including

primary and exclusive jurisdiction over issues relating to entitlement to benefits. N.J.S.A. 43:16A-13(a)(1) provides:

> [T]he general responsibility for the proper operation of the retirement system is hereby vested in a board of trustees . . . . The board shall act exclusively on behalf of the contributing employers, active members of the retirement system, and retired members as fiduciary of the system. The primary obligation of the board shall be to direct policies and investments to achieve and maintain the full funding and continuation of the retirement system for the exclusive benefit of its members.

The meaning of any statute is a question of law which we review de novo. Steele, 420 N.J. Super. at 133. Legislative intent is the primary concern in interpreting a statute, and "the best indicator of that intent is the statutory language." Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Courts do not "engage in conjecture or surmise which will circumvent the plain meaning" of a statute. Ibid.

Here, although the Legislature delegated general administrative authority over the pension fund to the Board under N.J.S.A. 43:16A-13(a)(1), the Legislature later explicitly delegated pension forfeiture determinations pursuant to N.J.S.A. 43:1-3.1 to the judiciary. While Ortmann places much emphasis on the use of the word "exclusively" in N.J.S.A. 43:16A-13(a)(1), this term is plainly used to establish that the Board, as fiduciary, is to act

solely in service of its contributing employers and members, to the exclusion of any other competing interests. Nothing in the plain language of the statute could be interpreted to preclude the Legislature from imposing new limitations or delegating other powers going forward, such as the delegation made to the judiciary in N.J.S.A. 43:1-3.1. Judge Jacobson therefore clearly had jurisdiction to resolve the pension forfeiture application.

Nor does the Legislative delegation in N.J.S.A. 43:1-3.1 violate the Separation of Powers clause of the New Jersey Constitution. See N.J. Const. art. III ("The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."). Like all statutes, N.J.S.A. 43:1-3.1 is presumed constitutional. Whirlpool Props. v. Dir., Div. of Taxation, 208 N.J. 141, 175 (2011). A legislative act will only be declared void if "its repugnancy to the Constitution is clear beyond a reasonable doubt." Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 388 (1959). The "heavy burden" of establishing invalidity rests with the party challenging the statute. State v. Trump Hotels & Casino Resorts, 160 N.J. 202, 526 (1999).

In this case, Ortmann has failed to meet the heavy burden of demonstrating that N.J.S.A. 43:1-3.1 is an unconstitutional violation of the Separation of Powers clause. Indeed, while the clause prevents the concentration of "inordinate power" in any single branch, it does not bar "cooperative action" among the three branches, nor the delegation of limited power from one branch to another. Brown v. Heymann, 62 N.J. 1, 11 (1972). In fact, "the doctrine necessarily assumes the branches will coordinate to the end that government will fulfill its mission." Ibid. It is well-established that the Legislature may delegate authority to another branch, so long as sufficient standards are provided to guide the exercise of discretion. Mt. Laurel v. Dep't of Pub. Advoc., 83 N.J. 522, 532 (1980). When the Legislature has chosen to delegate some of its authority to a co-equal branch, "it does not rest with [the judiciary] to quarrel with the legislative decision to make the delegation." Brown, 62 N.J. at 10.

Public-pension systems, like the Police and Firemen's Retirement System at issue here, are expressly a creation of the Legislature. See N.J.S.A. 43:16A-2. And the Legislature delegated certain powers to the Board for the purposes of administering that system. N.J.S.A. 43:16A-13(a). Among those powers delegated is the discretionary authority to order the forfeiture of

11

benefits when a member engages in misconduct during his or her public service. N.J.S.A. 43:1-3(b). To guide the Board in the exercise of this discretionary authority, the Legislature codified the Uricoli balancing test in N.J.S.A. 43:1-3(c), providing relevant factors for the Board to consider when deciding to impose a partial or complete forfeiture.

By making this delegation, however, the Legislature did not cede all its power to the Board, only those powers specified by statute. By enacting N.J.S.A. 43:1-3.1, the Legislature delegated a different power – the authority to enter mandatory pension forfeitures when the statutory criteria are met – and it explicitly delegated that power to the judiciary. See N.J.S.A. 43:1-3.1(c). In this regard, to distinguish between the Board's discretionary authority and the authority granted to the courts, the Legislature explicitly provided that "[n]othing in this section shall be deemed to preclude the authority of the board of trustees . . . from ordering the forfeiture of all or part" of a member's pension benefits pursuant to its discretionary authority. N.J.S.A. 43:1-3.1(e).

We also agree with Judge Jacobson that the pension forfeiture ordered did not violate Ortmann's procedural or substantive due process rights. Under Article I, § 1 of the New Jersey Constitution, "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which

12

are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." Although the phrase "due process" does not appear in this section, our Supreme Court has interpreted this provision to encompass both procedural and substantive due process protections. Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985).

In evaluating a procedural due process claim, New Jersey courts must determine whether the State has infringed on a protected liberty or property interest and "whether the procedures attendant upon that deprivation are constitutionally sufficient." Doe v. Poritz, 142 N.J. 1, 99 (1995). It is well-established that public employees, like Ortmann, have a protected property interest in their pension benefits. Gauer v. Essex Cty. Dep't of Welfare, 108 N.J. 140, 150 (1987) (citing Spina v. Consol. Police & Firemen's Pension Fund Comm'n, 41 N.J. 391, 402 (1964)). Procedural due process, however, is "not a fixed concept . . . but a flexible one that depends on the particular circumstances." Id. at 106. At a minimum, due process requires notice and the opportunity to be heard. Ibid.

Here, Ortmann received notice and had the opportunity to be heard before the trial court. We disagree with Ortmann's claim that he was entitled

to a proceeding in the Office of Administrative Law before an Administrative Law Judge. As noted, N.J.S.A 43:1-3.1(c) delegates to the judiciary, not the executive branch, the authority to address the complete pension forfeiture at issue. Equally as important, there were no factual questions requiring a hearing. Indeed, all relevant factual questions necessary to address the relief requested in the State's verified complaint were resolved by Ortmann's guilty plea.

The only issue remaining was a legal one: whether the crime of which Ortmann was convicted falls within the ambit of N.J.S.A. 43:1-3.1. Because the statute requires total forfeiture upon conviction of such a crime, the trial court was obligated to enter a forfeiture order upon its legal determination that Ortmann was convicted of a substantially similar crime to those enumerated under N.J.S.A. 43:1-3.1(b). In fact, as Judge Jacobson noted, the kind of evidentiary hearing requested by Ortmann would only function as an implied repeal of the mandatory forfeiture statute. If the trial judge hearing a pension forfeiture matter could reevaluate the undisputed facts of the underlying criminal conviction before deciding to enter a forfeiture order, there would no longer be anything "mandatory" about such a forfeiture.

As previously noted, it is well-established that public employees have a property interest in an existing pension benefits fund.  Gauer, 108 N.J. at 150. Based on this principle, Ortmann argues that the mandatory forfeiture order deprived him of his property interest in his pension benefits and violated his right to substantive due process.  We disagree.

"Insofar as most rights are concerned, a state statute does not violate substantive due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory."  Greenberg, 99 N.J. at 563.  Unless a "fundamental right" is implicated, a statute will survive a due process challenge so long as it is supported by a rational basis.  Ibid.  Although public employees have a property interest in their pension benefits, there is no fundamental right to a public pension, and Ortmann does not argue such a fundamental right.  See Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (stating that fundamental rights are those "objectively, deeply rooted in this Nation's history and traditions" and "implicit in the concept of ordered liberty" (internal quotation marks omitted)).

N.J.S.A. 43:1-3.1 is neither arbitrary nor discriminatory and is rationally related to the legitimate legislative purpose of discouraging corruption in the state's public workforce.  The statute is by no means unprecedented in its

imposition of pension forfeiture as a penalty for misconduct. "All public pension statutes in this State carry an implicit condition precedent of honorable service . . . . In that respect, pension forfeiture operates as a penalty or punishment for wrongful conduct." Corvelli v. Bd. of Trs., Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992). Pension forfeiture serves two government objectives: "punishment of the individual and deterrence, both as to the offending individual and other employees." Eyers v. State, Bd. of Trs. Pub. Emps. Ret. Sys., 91 N.J. 51, 56 (1982). In serving these dual purposes of punishment and deterrence, the pension forfeiture statute operates to protect the public from the serious problem of government corruption.

As Justice O'Hern noted in his dissent in Uricoli, while "the personal suffering that results from pension forfeiture" may seem like a harsh penalty, the Legislature deemed this to be an appropriate consequence for official misconduct. Uricoli, 91 N.J. at 84. It was well within the Legislature's power to set this penalty as it saw fit. See Brown, 62 N.J. at 10-11 (noting that policy decisions rest with the Legislature and that a statute's constitutionality "does not turn upon whether a plan is wise or unwise in a judge's view"). We agree with Judge Jacobson that because N.J.S.A. 43:1-3.1 reasonably relates to the

legitimate state interest in combating public corruption, the statute does not violate substantive due process and is therefore constitutional.

Finally, Ortmann argues that the trial court erred in declining to apply the Uricoli factors to his case. Again, we disagree.

Prior to the enactment of N.J.S.A. 43:1-3.1, the New Jersey Supreme Court established a balancing test and relevant factors for courts to apply when presented with a pension forfeiture claim. Uricoli, 91 N.J. at 77-78. The Uricoli factors, which were later codified in N.J.S.A. 43:1-3(c), apply "only to those claims for benefits where the specific pension statute is silent respecting the effect of a conviction for a crime relating to the applicant's public office." Borrello v. Bd. of Trs., Pub. Emps. Ret. Sys., 313 N.J. Super. 75, 77 (App. Div. 1998) (emphasis added). Because Ortmann pled guilty to a crime covered under N.J.S.A. 43:1-3.1, application of the Uricoli factors was not required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION